In the Matter of the Arbitration between DAIRYMEN'S LEAGUE COOPERATIVE ASSOCIATION, INC., Respondent, and F. A. CONRAD, Individually and as President of Milk Drivers and Dairy Employees Union Local No. 338, et al., Appellants.

Fourth Department, April 12, 1963.

*Cohen & Weiss* (*Herbert A. Levy* of counsel), for appellants.

*Bond, Schoeneck & King* (*Raymond W. Murray, Jr.,* of counsel; *Tracy H. Ferguson* with him on the brief), for respondent.

HALPERN, J.   Local No. 338 of the Milk Drivers and Dairy Employees Union (hereinafter referred to as the Union) appeals from an order of Special Term, directing that the arbitration of a controversy between the Union and the petitioner Dairymen's League Cooperative Association, Inc. (hereinafter

referred to as the Employer) should be " governed solely and exclusively by the terms and conditions of the aforesaid agreement dated July 26, 1961 " (the so-called Middletown agreement) and that " said agreement is hereby deemed to be the only instrument applicable to the aforesaid controversy ". The Union maintains that another agreement between the parties (the so-called Poughkeepsie agreement and particularly paragraph 36 C thereof) is also applicable to the controversy and that the arbitration should proceed upon the basis of both agreements.

The Middletown and Horseheads terminals or garages (hereinafter referred to as the Middletown terminal) were gathering points for milk, which was hauled by tank truck to the milk processing plant of the Employer at Poughkeepsie.

The controversy to be arbitrated grows out of the closing down by the Employer of the Middletown terminal and the contracting out to " outside truckmen " of the work formerly performed by truck drivers employed by the Employer at that terminal, with the result that approximately 55 truck drivers were discharged from the Employer's employment.

The employees of the Middletown terminal were covered by a collective bargaining agreement which was entered into on July 26, 1961, for a term of one year commencing on July 1, 1961, and ending on June 30, 1962. The employees at the Poughkeepsie milk processing plant were covered by an agreement entered into April 11, 1960, which was renewed on December 18, 1961, for a further term of two years commencing November 30, 1961, and ending November 30, 1963.

The Poughkeepsie agreement was executed upon a standard printed form which was designed for use throughout the mid-Hudson area; its language was not adapted to the specific situation of any one of the several employers who were called upon to execute the agreement.

Paragraph 36 C of the Poughkeepsie agreement reads as follows: " 36. C. Should any Employer, signatory to this contract, engage during the life of this contract in tank truck milk hauling, originating or terminating in the serving area covered by this contract, he shall do so with his own employees working under this contract, providing he has no conflicting contractual legal or statutory obligations, at the then prevailing rates for such work."

The Middletown agreement did not contain any express provision forbidding the contracting out of work by the Employer.

In January, 1962, the Employer contracted out to third persons 75% of the tank truck milk hauling work which had formerly

been performed by its own employees, truck drivers working out of the Middletown terminal. Subsequently, the terminal was closed down and the remaining tank truck milk hauling work was contracted out and the remaining employees were discharged.

Each of the collective bargaining agreements contains an arbitration clause. The clause in the Poughkeepsie agreement is of the most comprehensive type: " 14. Any and all disputes and controversies arising under or in connection with the terms or provisions of this agreement, or in connection with or relating to the application or interpretation of any of the terms or provisions hereof, or in respect to anything not herein expressly provided but germane to the subject matter of this agreement, which the representatives of the Union and the Employer have been unable to adjust, shall be submitted for arbitration to an arbitrator selected from a list of arbitrators to be furnished by the Federal Mediation and Conciliation Service in each case. If no arbitrator on such list is mutually acceptable to the parties, the arbitrator shall be designated by the Director of the Federal Mediation and Conciliation Service or his duly authorized designee."

The Middletown agreement contains an arbitration clause of a somewhat more limited type but it concededly is broad enough to cover the present controversy. The Middletown agreement, like the Poughkeepsie agreement, provides for the designation of an arbitrator by the Federal service, if the parties are unable to agree on an arbitrator.

Shortly after the Employer contracted out the truck hauling work out of Middletown, the Union demanded arbitration. The Union did not state in its demand whether the demand was made under the Middletown agreement or under the Poughkeepsie agreement or both but upon this appeal the Union maintains that it seeks arbitration under both agreements. First of all, it maintains that there is to be spelled out of all the provisions of the Middletown agreement an implied prohibition against the contracting out of the work normally done by direct employees of the Employer, during the term of the agreement (see Cox, " Reflections upon Labor Arbitration ", 72 Harv. L. Rev. 1482, 1517–1518; " Arbitration of Subcontracting Disputes: Management Discretion vs. Job Security ", 37 N. Y. U. L. Rev. 523). This aspect of the controversy presents no problem for us. The Employer has repeatedly stated that it was " perfectly willing to arbitrate the Union's claim concerning the ' employment of outside truckmen and discharge of approximately 40 tank truck drivers on or about January 13, 1962,' under the Middletown agreement ".

The Union maintains, however, that it also has the right to arbitrate the question of whether the Middletown contracting out was a violation of the provisions of paragraph 36 C of the Poughkeepsie agreement. It concedes that the terms and conditions of employment specified in the Poughkeepsie agreement cover only the employees at the Poughkeepsie plant but it maintains that paragraph 36 C constituted an additional obligation undertaken by the Employer affecting its employees at terminals and garages outside Poughkeepsie. The Union interprets paragraph 36 C as forbidding the contracting out of work by the Employer on any of the Employer's milk hauling routes originating or terminating at the Poughkeepsie plant, even though the work is done by employees of the Employer under separate collective bargaining agreements, and therefore it maintains that the contracting out of the Middletown work was a violation of paragraph 36 C.

On the other hand, the Employer maintains that paragraph 36 C does not refer to the contracting out of the work at the Middletown terminal for two reasons: first, that paragraph 36 C, like all the other provisions of the Poughkeepsie agreement, applies only to employees working under that agreement; second, that the Middletown employees were governed by a separate collective bargaining agreement which was complete and self-contained and paragraph 36 C does not apply to employees covered by a separate collective bargaining agreement. The Employer stresses, as establishing that the parties did not intend to have the Middletown employees affected by paragraph 36 C, the fact that a clause dealing with the sale or lease of routes (although not directly prohibiting contracting out) was the subject of specific negotiation between the parties at the time of negotiating the Middletown agreement and that the parties agreed that no such clause should be included in the Middletown agreement.

The Union counters by pointing out that the Poughkeepsie agreement was renewed after the negotiation of the Middletown agreement and it argues that despite the fact that no provision dealing with contracting out had been incorporated in the Middletown agreement, the Employer, upon the renewal of the Poughkeepsie agreement thereafter, assumed anew an obligation not to contract out the work normally performed by any of its employees upon any of the milk-hauling routes terminating at the Poughkeepsie plant. But it should be noted in support of the Employer's position in this connection that in the opening paragraph of the renewal agreement, the words " covering the

undersigned Employer's employees at 731 Main Street, Poughkeepsie, N. Y." were interlineated.

In this situation, with conflicting interpretations growing out of a complicated contractual history, we believe that the Union is entitled to have its contentions submitted to the arbitrators, with respect to both the Middletown and the Pougheepsie agreements. The choice between the Union's interpretation and the Employer's interpretation of paragraph 36 C of the Poughkeepsie agreement is for the arbitrators and not for the courts. When a collective bargaining agreement contains a general arbitration clause, questions concerning the interpretation, scope effectiveness and applicability of a particular provision of the agreement are peculiarly within the province of the arbitrators. " Once it be ascertained that the parties broadly agreed to arbitrate a dispute ' arising out of or in connection with ' the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances. It has long been this State's policy that, where parties enter into an agreement and, one of its provisions, promise that any dispute arising out of or in connection with it shall be settled by arbitration, any controversy which arises between them and is within the compass of the provision must go to arbitration " (*Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329, 334; see, also, *Matter of Spectrum Fabrics Corp.* [*Main St. Fashions*], 285 App. Div. 710, affd. 309 N. Y. 709).

Section 1448-a of the Civil Practice Act (added by L. 1962, ch. 346) reads: " Arbitrability not to depend upon merits of claims. In determining any matter arising under this article, the court or judge shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute." This section was intended to abrogate the *Cutler-Hammer* rule (*Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, affd. 297 N. Y. 519), under which the courts had undertaken to pass upon the tenability of the interpretations respectively advanced by the parties (1962 Report of N. Y. Law Rev. Comm.; N. Y. Legis. Doc., 1962, No. 65 [F] ; 2 McKinney's 1962 Session Laws, p. 3399).

The United States Supreme Court has stated the presently prevailing rule as follows:

" The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face

is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator * * *.

" The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." (*Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 567–568.) (See, also, as to the arbitration of a contracting out dispute, *Steelworkers* v. *Warrior & Gulf Co.*, 363 U. S. 574.)

It is, of course, the function of the courts to pass upon the legality of the provision sought to be arbitrated and the courts will deny arbitration " where the performance which is the subject of the demand for arbitration is prohibited by statute (see *Matter of Kramer & Uchitelle* [*Eddington Fabrics Corp.*], 288 N. Y. 467) " or is forbidden by " controlling public policy " (*Matter of Exercycle Corp.* [*Maratta*], supra, p. 335). To the same effect, see *Local 453, Int. U. E. R. & M. W.* v. *Otis Elevator Co.* (314 F. 2d 25).

So far as we have been able to ascertain, there is no statute or policy which would forbid the enforcement of paragraph 36 C if the arbitrators should decide to adopt the Union's interpretation of that provision. A different situation would be presented, involving difficult questions of legality and enforcibility, if, at the time of the renewal of the Poughkeepsie agreement, the employees at the Middletown terminal had been represented by a different union or local. But in the situation before us the same local of the same Union represented both the Middletown and the Poughkeepsie employees and it succeeded in procuring, as part of its Poughkeepsie agreement, a broad provision which, according to its view, advanced the interests of the local as a whole and conferred a special benefit upon its Middletown members. There may be a question as to whether such a provision could have been made a mandatory subject of collective bargaining if the Employer had declined to engage in bargaining with respect to it (cf. CCH 1963 Guidebook to Labor Relations, p. 268) but we know of nothing in existing labor law or policy which forbids the voluntary making of an agreement embodying such a provision (cf. *Labor Bd.* v. *Rockaway News Co.*, 345 U. S. 71, 80; National Labor Relations Act, § 8; U. S. Code, tit. 29, § 158, subd. [b], par. [4], cl. [D]).

The Employer maintains that paragraph 36 C is illegal because it provides that all truck drivers employed in the future on any milk hauling route originating or terminating in Poughkeepsie must be brought within the Poughkeepsie bargaining

unit and must be employed under the Poughkeepsie contract. The Employer maintains that this violates existing law or policy as to the determination of bargaining units or, perhaps more accurately, that it invades an area pre-empted by Federal law and vested in the exclusive jurisdiction of the National Labor Relations Board. This argument overlooks the proviso in paragraph 36 C that the future employees need not be brought under the Poughkeepsie agreement if there are "conflicting contractual legal or statutory obligations". In any event, we do not believe that the point sought to be raised by the Employer is involved in the present controversy. Under the Union's construction of paragraph 36 C, there is a separable primary obligation under that paragraph, requiring the Employer to carry on all tank truck milk hauling terminating at the Poughkeepsie plant, with its own employees, separate and apart from any requirement that the Employer bring the employees into the Poughkeepsie bargaining unit. All that is involved in the present controversy is the Union's claim that contracting out at Middletown was prohibited by paragraph 36 C. The arbitrators will be called upon to decide only whether there was a prohibition of contracting out and whether it was applicable to the Middletown employees. There is no controversy at this time as to the bargaining unit in which any employees are to be embraced.

The order appealed from should therefore be modified so as to provide that the arbitration of the dispute concerning the contracting out of the Middletown milk hauling work and the resulting discharge of the Middletown employees should proceed under the Middletown agreement and, also, under the Poughkeepsie agreement, insofar as it may be determined by the arbitrators that the provision of paragraph 36 C of that agreement is applicable to the employees at the Middletown terminal and, as modified, the order should be affirmed.

WILLIAMS, P. J., BASTOW, GOLDMAN and McCLUSKY, JJ., concur.

Order unanimously modified in accordance with the opinion and as modified affirmed, without costs of this appeal to any party.