OPINION OF THE COURT
Vincent Pizzuto, J.
Motions numbered 28, 87, 108 and 109 of the March 18, 1983 calendar are consolidated for the purposes of this decision. In brief these motions seek the following types of relief:
(1) motion number 28 is brought by petitioners, Jacob Mendelsohn and Mordchai Z. Greenfield, pursuant to CPLR 7503 (subd [b]) seeking to permanently stay the arbitration demanded by respondent;
(2) motion number 87 is brought by the respondent, A & D Catering Corporation, for an order staying the petitioners from proceeding with a landlord and tenant action in the Civil Court, Kings County (index No. 40911/83) pending the outcome of the arbitration between these parties;
(3) motion number 108 is brought by the respondent for an order seeking to punish petitioners for contempt for *582 failing to abide by the order of Hon. Frank Pino, dated March 8, 1983 which enjoined the petitioners from proceeding with the landlord and tenant proceeding in the Civil Court, Kings County, under index No. 40911/83;
(4) motion number 109 is brought by the respondent for an order directing the law firm of Regosin, Edward, Stone & Feder to turn over to respondent’s attorneys all files relating to the matters in controversy between the petitioners and respondents.
background
Sometime prior to February 1, 1976 respondent purchased a catering business known as the Aperion Manor from Joseph and Moshe Pruzansky, the then landlords of 813 Kings Highway, Brooklyn, New York, and the principals of W & L Caterers, Inc. In connection with this purchase, numerous documents were executed between the parties, including a lease for a 10-year term. Article 30 of said lease provides as follows:
“30.1 The lessee shall make application on or before February 1, 1976 to the State Liquor Authority for a license to serve liquor at the demised premises and will diligently prosecute such application by furnishing and filing all information and all documents required by such authority.
“30.2 Pending approval or disapproval of this lease by the State Liquor Authority and the issuance or denial of an appropriate liquor license to the lessee, the lessee shall operate a catering establishment at the demised premises but shall in no manner or form serve liquor at the demised premises. In the event that any customer requests liquor to be served at an affair then such request shall be submitted to W & L Caterers, Inc. and independent arrangements shall be made between the customer and W & L Caterers, Inc., or the customer may bring in his own liquor, at the customer’s option.
“30.3 In the event that the State Liquor Authority does not approve an appropriate liquor license to the lessee then the arrangement provided for in Section 30.2 shall continue during the term of the lease.”
*583 Additionally, article 31 of this lease provided for a broad arbitration clause. Finally a management agreement which the Pruzanskys signed contemporaneously with the lease also provided for arbitration of any disputes. Pursuant to these various agreements respondent operated a catering establishment utilizing the liquor license issued to W & L Caterers, Inc. On August 15, 1978 the demised premises were sold to the petitioners who assumed all of the obligations of the Pruzanskys.
Subsequently, relations between the respondent and the Pruzanskys began to sour, with the Pruzanskys refusing to sign the necessary papers for maintaining the liquor license of W & L Caterers, Inc. This dispute ultimately lead petitioners to institute a nonpayment action on December 9, 1981 (index No. 123260/81). Respondent countered immediately by securing a temporary restraining order on December 17, 1981, which stayed the landlord and tenant proceeding. Concomitant with this relief, respondent commenced an action, seeking specific performance against the petitioners with respect to their obligations to maintain the liquor license. Both of these proceedings were thereafter discontinued and the parties proceeded to arbitrate their disputes in front of a rabbinical court. On or about March, 1982, that court issued a sealed arbitration award.
On January 17,1983 petitioners served a notice of termination of tenancy upon the respondent alleging violation of subdivision 7-a of section 3, section 64, section 67 (subd 1, par [b]), subdivision 3 of section 110 and section 111 of the Alcoholic Beverage Control Law. That same date, respondent replied by demanding arbitration pursuant to the terms of the lease and management agreement. On February 28, 1983 petitioners commenced a holdover proceeding in the Civil Court, Kings County, under index No. 40911/83. This proceeding was stayed pursuant to the temporary restraining order of Hon. Justice Pino on March 8, 1983. Finally, on March 14, 1983, respondent served petitioners with a notice to admit pursuant to CPLR 408 and 3123.
ARBITRATION
The threshold issue to be decided by this court is whether or not the dispute between these parties which arose in *584 connection with the maintenance of a liquor license is amenable to arbitration, In this respect petitioners argue that the strong public policy of this State precludes the use of a forum in arbitration where the dispute involves violations of the Alcoholic Beverage Control Law. In the alternative, petitioners contend that respondent’s institution of an action on or about December 17, 1981 constitutes a waiver of its rights to arbitration.
It is by now a settled proposition that this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Amer., 37 NY2d 91, 95; Matter of Maye [Bluestein], 40 NY2d 113). In furtherance of the laudable purposes served by permitting consenting parties to submit controversies to arbitration the law has adopted a policy of noninterference, with few exceptions, in this mode of dispute resolution (Matter of Sprinzen [Nomberg], 46 NY2d 623, 629). Clearly, arbitration is a recognized and favored means by which parties expeditiously and efficiently may settle disputes which might otherwise take years to resolve.
What must be untangled, however, is the nettlesome question of whether the public policy of this State precludes arbitration of the present dispute. In this respect the statement has been bandied about that excluded from the ambit of arbitration have been questions of violations of the criminal law (see, e.g., 8 Weinstein-Korn-Miller, NY Civ Prac, par 7501.19; Harris v Shearson Hayden Stone, 82 AD2d 87, 92). At the outset, it should be noted that there is no quarrel with the proposition that the proprietary operation by one entity as a catering establishment by utilizing the liquor license issued to another entity would be in violation of the law and against public policy (Alcoholic Beverage Control Law, § 111; Matter of South Shore Yacht Club v State Liq. Auth., 34 AD2d 794; Smith v Pope, 72 AD2d 913). Respondent has taken the position, that notwithstanding what has happened in the past, it is not presently using nor will it attempt to utilize the liquor license of W & L Caterers, Inc., in the operation of its catering enterprise. It is not readily apparent, however, whether a violation of the Alcoholic Beverage Control Law *585 ipso facto mandates the denial of an arbitration forum. Put another way, does the label of criminal violation so envelop the proceeding that the underlying contract of arbitration is rendered null and void? Notwithstanding the practicable utility of denominating a breach of statute as being a “criminal violation” (see, e.g., Alcoholic Beverage Control Law, § 130, making any violation thereof a “misdemeanor”), such labeling ought not to prevent a court from analyzing the various public policies involved in either allowing a dispute to proceed to arbitration or barring the parties from this remedy.
Consequently, it is for the courts to decide, as a threshold question, whether the enforcement of an agreement to arbitrate a particular matter would so contravene an important public policy that arbitration should not proceed (Matter of Board of Educ. [Buffalo Council of Supervisors & Administrators], 52 AD2d 220, 225; Matter of National Equip. Rental [American Pecco Corp.], 35 AD2d 132, 135, affd 28 NY2d 639; Durst v Abrash, 22 AD2d 39, 44, affd 17 NY2d 445). Obviously, the function which W & L Caterers, Inc. was required to perform under the lease was to act as a conduit for respondent’s use of its liquor license. If this was the sole issue in dispute between these parties, this court would properly construe that purported agreement as being against public policy and invalid. On the other hand, a too rigorous application of this prohibition would impinge upon and weaken the broad public policy favoring arbitration. Thus, the law will not presume an agreement void as illegal or against public policy when it is capable of a construction which would make it consistent with the laws and valid (Curtis v Gokey, 68 NY 300, 304; Bigelow v Benedict, 70 NY 202, 204-205; Lorillard v Clyde, 86 NY 384, 387; Shedlinsky v Budweiser Brewing Co., 163 NY 437, 439). In addition to the dispute over the liquor license there remains a plethora of unresolved issues between these parties. Accordingly, there is an element of respondent’s dispute which may properly be resolved by arbitration.
Furthermore, the alleged violation of the Alcoholic Beverage Control Law should not deprive respondent of its right to arbitration. Thus, in Matter of National Equip. *586 Rental (American Pecco Corp.) (supra), the purchaser of two terminal container loaders sought to avoid arbitration by alleging that the installation of this equipment violated applicable rules and regulations of the New York City Fire Department. In rejecting this attempt to thwart arbitration the Appellate Division, First Department, declared (supra, p 135) that, “it may be assumed that the arbitrators will not render an award which would require the doing of an act prohibited by law or offensive to public policy. If there is such an award, the court has the power to vacate it.” Generally, exceptions to arbitration are narrowly confined to rights and remedies created by State regulatory statutes, and represent a determination that the public interest is best served by maintaining access to the remedies which the Legislature has provided (Keating v Superior Ct. of Alameda County, 31 Cal 3d 584, 601-602; see, also, Kamakazi Music Corp. v Robbins Music Corp., 684 F2d 228, 231). In these exceptional cases arbitration is forbidden not because matters of public interest are involved, but because statutes require that the decisions be made by certain specified authorities. Over the years, therefore, a small number of problems have been recognized as so interlaced with strong public policy considerations that they have been placed beyond the reach of the arbitrators (Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235).
Consequently, such public policy exceptions to arbitration have been limited to controversies involving antitrust law (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621; Matter of Allied Van Lines (Hollander Express & Van Co.], 29 NY2d 35), liquidation of insolvent insurance companies (Matter of Knickerbocker Agency [.Holz], 4 NY2d 245), and usurious loans (Durst v Abrash, 22 AD2d 39, supra). The area of public policies which preclude the arbitration forum is not easily defined. However, it seems apparent that in those cases where the public policy pendulum has swung away from arbitration the guiding criteria have been the pervasiveness of the regulatory scheme rather than the label of criminal violation. Accordingly, in Matter of Kingswood Mgt. Corp. (Salzman) (272 App Div 328), the court held that the Emergency Price Control Act *587 was adopted from urgent reasons of public policy which the Congress did not intend to turn over to private arbitrators to administer. Again in Matter of Kramer & Uchitelle (Eddington Fabrics Corp.) (288 NY 467) the Court of Appeals found that an agreement to arbitrate was put to an end by the presence of the Office of Price Administration. Finally, in Matter of Goldmar Hotel Corp. (Morningside Studios) (283 App Div 935), the Appellate Division prevented a tenant from arbitrating its obligation to make repairs to the demised premises where violations of the Multiple Dwelling Law existed. In this latter case, the court was obviously more concerned with the health, safety and welfare of the citizenry (Multiple Dwelling Law, § 2) rather than with any attendant criminal violations (Multiple Dwelling Law, § 304). For this reason the court stated (supra, p 935) that, “The Municipal Court will be concerned solely with the question of whether there were violations which were not removed in time. It will not be concerned with any question as to whether repairs were otherwise necessary or required by virtue of the contract between the parties.”
It is, of course, the function of the courts to pass upon the legality of the provision sought to be arbitrated and the courts will deny arbitration where the performance which is the subject of the demand for arbitration is prohibited by statute (Matter of Dairymen’s League Co-op. Assn. [Conrad], 18 AD2d 321). This is not to say however that the mere mouthing of a criminal violation will suffice to invalidate an arbitration agreement. Rather, the court will weigh the public policy considerations against the parties’ agreement to resolve their dispute outside of the judicial forum. Since it is alleged by the respondent that it no longer seeks to impose any obligation upon W & L Caterers, Inc. to procure a liquor license, any violations of the Alcoholic Beverage Control Law have been rendered moot. In any event, any violation of those laws, although concededly a “criminal violation” (see Alcoholic Beverage Control Law, § 130), does not rise to the level of a pervasive scheme of legislation which would oust an arbitrator from exercising jurisdiction on public policy grounds. This type of statutory violation simply does not fit into the small cate *588 gory of cases that have been excepted from the parameters of arbitration on public policy grounds.
Petitioners argue in the alternative that by previously resorting to litigation of this very dispute, respondent has waived its right to arbitration. In this respect petitioners point to the commencement by respondent of its specific performance action on or about December 17, 1981 as manifesting an unequivocal intention to forego any right to arbitration. It is well established that an arbitration provision in a contract like any other provision of a contract may be waived or abandoned by the parties, and such waiver may be evidenced by their conduct in seeking judicial relief instead of arbitration (Esquire Inds. v East Bay Textiles, 68 AD2d 845). Moreover, a party entitled to demand arbitration waives that right by bringing an action involving the same claim (Matter of Spirs Trading Co. v Occidental Yarns, 73 AD2d 542). Consequently, the courts have held that the right to compel arbitration is waived by taking any action in a litigation that is deemed unequivocal and a sufficient use of the judicial process so as to be inconsistent with the intention to arbitrate (Jade Press v Packard, 91 Misc 2d 820). Finally, it has been held that where there has been an intention to abandon the right to arbitration, that right is irrevocably lost (see Zurich Ins. Co. v Evans, 89 Misc 2d 717, 720; Matter of Young v Crescent Dev. Co., 240 NY 244, 251).
Despite the myriad number of situations whereby arbitration may be waived (i.e., participating in prior litigation [Van Den Bogaerde v Staub, Warmbold & Assoc. Int., 80 AD2d 517], seeking arrears in Family Court [Salisbury v Salisbury, 83 AD2d 990]) it is nevertheless essential that a court find an intention to proceed in a judicial arena. A review of the facts herein reveals that such an intention was not manifested by the respondent when it commenced the prior action for specific performance. It is quite clear that respondents’ actions at that time were precipitated solely by the nonpayment proceeding commenced against them on December 9, 1981 and limited to the extent of seeking specific performance with respect to petitioners’ obligations to maintain the liquor license. What respondent intended was to maintain the status quo rather than *589 forsaking its rights under arbitration. Most significantly that dispute was ultimately resolved by arbitration in a rabbinical court.
Petitioners also emphasize the fact that respondent has resorted to discovery proceedings in the instant litigation by serving a notice to admit. All of the actions taken together, petitioners argue, bring the respondent within the ambit of De Sapio v Kohlmeyer (35 NY2d 402) and mandate a finding that the right to arbitration has been waived. In that case plaintiff, a block trader on the stock exchange, sued his former employer for defamation (supra, p 403). Although the defendant raised arbitration as an affirmative defense, it obtained a deposition of plaintiff prior to moving for a stay of the action based on arbitration (supra, p 404). On these facts the Court of Appeals held that the actions by defendant were “a sufficiently affirmative use of the judicial process so as to be inconsistent with a later motion to stay” (supra, p 406).
Notwithstanding the raison d’etre of De Sapio v Kohlmeyer (supra), that decision is not determinative in a situation where the party attempting to enforce arbitration rights has resorted to the judicial forum solely for the purpose of maintaining the status quo. In this respect the Court of Appeals has recently observed that there is neither waiver nor an election of remedies, where, as here, plaintiff moves in court for protective relief in order to preserve the status quo while at the same time exercising its right under the contract to demand arbitration. (Preiss/Breismeister Architects v Westin Hotel Co. —Plaza Hotel Div., 56 NY2d 787.) For several cogent reasons this court holds that PreissIBreismeister is controlling on the issue of waiver.
In the first place, the plaintiff therein commenced an action seeking an injunction and declaratory relief in order to recover 80 architectural drawings alleged seized by that defendant. Thereafter that plaintiff served a deposition notice, followed several days later by a demand for arbitration. At the Appellate Division, Justice Silverman writing for the dissent argued that “[hjaving decided against arbitration and in favor of court action with respect to some portion of the relief to which plaintiff deems itself entitled *590 by reason of the same matters ‘arising out of, or relating to this Agreement or the breach thereof,’ plaintiff has waived the right to arbitration as to those matters” (Preiss/Breismeister Architects v Westin Hotel Co. —Plaza Hotel Div., 86 AD2d 844, 847). Needless to say, this argument was rejected by the Court of Appeals. Moreover, the action taken by the plaintiff in Preiss/Breismeister was no different in either quality or quantity than those taken by the respondent herein. Secondly, the case of De Sapio vKohlmeyer (35 NY2d 402, supra) was relied on by the dissent in Preiss/Breismeister. Finally, the notice to admit which was served by the respondent on March 14, 1983, albeit one of the discovery mechanisms, which can be indicative of an intent to waive arbitration, may not be so construed under the circumstances of this case. Although the delineation between an intent to waive the arbitration process and efforts to maintain the status quo can rarely be made with absolute clarity, the totality of circumstances herein does not warrant a finding that there was a waiver. There can be little doubt that respondent commenced the action for specific performance in 1981 solely to protect its status as a tenant in the demised premises. Furthermore, the notice to admit does little more than seek verification of petitioners’ obligations under the various contractual agreements between respondent and the Pruzansky brothers as well as reiterating respondent’s right to arbitration. For all of these reasons, the court finds that respondent did not waive the right to arbitrate this matter.
Accordingly, petitioners’ motion to stay arbitration is denied in all respects. Respondent’s motion to stay the Civil Court from proceeding with the holdover action under index No. 40911/83 pending the outcome of arbitration is granted on condition that respondents continue to pay any and all moneys due under the lease. Such payments may be accepted by petitioners without prejudice to any rights they may have to the ultimate possession of the premises. Finally, both the motion to punish petitioners for contempt and the motion seeking a turn over of files in the possession of the law firm of Regosin, Edward, Stone & Feder are denied in all respects.