Jacob Mendelsohn et al., Appellants, v A & D Catering Corporation, Respondent.

Second Department, March 19, 1984

**APPEARANCES OF COUNSEL**

*Bressler, Lipsitz & Rothenberg* (*William R. Kutner, David L. Smith* and *Daniel M. Wasser* of counsel), for appellants.

*·Vann & Borenstein, P. C.* (*Abraham Borenstein* of counsel), for respondent.

**OPINION OF THE COURT**

Mollen, P. J.

On this appeal, we are called upon to decide whether Special Term (119 Misc 2d 581) properly denied an application to stay arbitration of a landlord-tenant dispute involving the sale and service of alcoholic beverages at the leased premises. There should be an affirmance.

Prior to February 1, 1976, Joseph and Moshe Pruzansky (the Pruzanskys) owned a catering business, W & L Caterers, Inc. (W & L), which conducted its business at a hall also owned by the Pruzanskys. W & L had a liquor license and it served liquor at affairs in the hall. On or about February 1, 1976, A & D Catering Corporation (respondent) purchased the catering business and entered into several agreements with the Pruzanskys and W & L, including a 10-year lease.

The lease, in relevant part, provided:

"30.1 The LESSEE shall make application on or before February 1, 1976 to the State Liquor Authority for a license to serve liquor at the demised premises, and will diligently prosecute such application by furnishing and filing all information and all documents required by such authority.

"30.2 Pending approval or disapproval of this lease by the State Liquor Authority and the issuance or denial of an appropriate liquor license to the LESSEE, the LESSEE shall operate a catering establishment at the demised premises but shall in no manner or form serve liquor at the demised premises. In the event that any customer requests liquor to be served at an affair then such request shall be submitted to W & L Caterers, Inc. and independent arrangements shall be made between the customer and W & L Caterers, Inc., or the customer may bring his own liquor, at the customer's option.

"30.3 In the event that the State Liquor Authority does not approve an appropriate liquor license to the LESSEE then the arrangement provided for in Section 30.2 shall continue during the term of the Lease."

In this regard, a second ("wraparound") agreement executed by the parties provided: "13. Until such time as A & D CATERING CORP. obtains a liquor license W & L CATERERS, INC. shall continue to make application to renew its liquor license at the expense however of A & D CATERING CORP. commencing February 1, 1977."

Finally, article 31 of the lease provided for arbitration as follows: "31.1 Except for the payment of rent any controversy regarding the interpretation of any provisions of this

lease which shall arise between the LESSOR and the LESSEE regarding the rights, duties or liabilities hereunder shall be settled by a Board of Arbitrators".

On or about August 15, 1978, Jacob Mendelsohn and Mordechai Z. Greenfield (petitioners) purchased the catering hall from the Pruzanskys and subsequently acknowledged that they were subject to the terms and conditions of the agreements entered into between the Pruzanskys and W & L, and respondent.

During its tenancy, respondent never obtained a liquor license but catered affairs at which liquor was served. As noted ante, according to the terms of the lease, respondent's customers who wanted liquor could either bring their own or arrange with W & L to supply it. W & L's liquor license was renewed annually up to and including March 1, 1982, notwithstanding that W & L was dissolved by proclamation of the Secretary of State on September 24, 1980.

In or about 1980, the Pruzanskys violated the clause of the lease which prohibited them from competing with respondent in the catering business. The dispute was submitted to arbitration and respondent obtained four awards which were confirmed by order of the Supreme Court, Kings County (LEONE, J.).

Thereafter, the Pruzanskys refused to sign documents necessary to renew W & L's liquor license, which refusal caused respondent to withhold payment of rent. On December 9, 1981, petitioners instituted a summary proceeding to dispossess respondent. Respondent, in turn, commenced an action in the Supreme Court, Kings County, on or about December 16, 1981, seeking specific performance of petitioners' contractual obligations to maintain W & L's liquor license. By order to show cause, dated December 17, 1981, respondent made application to the Supreme Court, Kings County, *inter alia,* for an order enjoining petitioners from dispossessing respondent during the pendency of the specific performance action. As part of the order, the court issued restraints against petitioners in connection with the summary dispossess proceeding, pending a hearing on respondent's application for injunctive relief. Both actions were eventually discontinued and the disputes were sub-

mitted to arbitration before a rabbinical court. A sealed arbitration award was issued in or about March, 1982.

On January 17, 1983, petitioners served upon respondent a notice of termination of tenancy on the ground that "[i]t has come to our attention that, over a prolonged period of time, you have habitually and consistently engaged in a course of illegal trade and business at the captioned premises". Petitioners stated that respondent violated the Alcoholic Beverage Control Law by serving liquor without a license, and as such, they elected to exercise their right to treat the lease as void. Respondent immediately demanded arbitration.

Petitioners thereafter filed a petition, verified on January 27, 1983, to stay arbitration on the grounds that (1) the arbitration provision contained in the lease was not sufficiently broad to reach the liquor license dispute; (2) the public policy of this State would not permit the parties to resolve questions turning on criminal violations of the Alcoholic Beverage Control Law by way of arbitration; and (3) respondent had waived any right it might otherwise have had to enforce the arbitration clause by resorting to the courts in connection with the same dispute. Respondent answered the petition stating, *inter alia,* that it is not presently using nor will it use in the future W & L's liquor license in the operation of its catering business.

On February 28, 1983, petitioners instituted a summary proceeding to dispossess respondent as a holdover tenant. This proceeding was temporarily stayed on March 8, 1983, and consolidated with the petition to stay arbitration. On March 14, 1983, respondent served petitioners with a notice to admit in connection with the landlord-tenant action.

By judgment dated June 17, 1983, Special Term, *inter alia,* denied the application to stay arbitration and stayed the prosecution of the landlord-tenant action (119 Misc 2d 581, *supra*). Petitioners filed a timely notice of appeal from that judgment.

Subsequently, petitioners moved by order to show cause dated July 22, 1983, to renew their application to stay arbitration. In essence, petitioners alleged that, after the application was denied respondent's conduct in connection with petitioners' separate action to recover items of unpaid

rent and additional rent, which was then owing, was inconsistent with its demand for arbitration, and, therefore, amounted to a waiver of the right to arbitration. Examples cited by petitioners were respondent's counterclaims contained in its answers, as well as its demand that petitioner Mendelsohn be available for a deposition. Respondent opposed the motion to renew, arguing that petitioners' action concerned rents and tax escalations which, according to the arbitration clause in the lease, were not proper subjects for arbitration. The action, respondent concluded, was entirely separate and distinct from the liquor license dispute which was arbitrable. By order dated August 18, 1983, Special Term granted petitioners' motion to renew but adhered to its original determination.

At the outset, we note that "the announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties" (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,* 37 NY2d 91, 95; accord *Matter of Maye* [*Bluestein*], 40 NY2d 113, 117-118; see Siegel, NY Prac, § 586, pp 826-830). To encourage its use, "the law has adopted a policy of noninterference, with few exceptions, in this mode of dispute resolution" (*Matter of Sprinzen* [*Nomberg*], 46 NY2d 623, 629).

Parties to a contract may therefore agree to submit to arbitration any and all controversies arising from their contractual relationship (see *Matter of Sprinzen* [*Nomberg*], *supra*). If they do, the courts of New York will give effect to their intention (*Matter of Marchant v Mead-Morrison Mfg. Co.,* 252 NY 284, 298, app dsmd 282 US 808). Accordingly, "where parties enter into an agreement and, in one of its provisions, promise that any dispute arising out of or in connection with it shall be settled by arbitration, any controversy which arises between them and is within the compass of the provision must go to arbitration" (*Matter of Exercycle Corp.* [*Maratta*], 9 NY2d 329, 334). In construing an arbitration clause in a commercial contract, however, "the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek

judicial relief and instead submit to arbitration" (*Bowmer v Bowmer,* 50 NY2d 288, 293-294, quoted in *Matter of Baime [Martin's],* 88 AD2d 595, 596).

The arbitration clause in the case at bar required the parties to submit to arbitration *any* nonrent controversy "regarding the interpretation of any provisions [*sic*] of this lease which shall arise between [the parties] regarding the rights, duties, or liabilities hereunder". The lease also provided that until a liquor license is issued to it, respondent may not serve alcohol at the leased premises. The dispute between the parties is whether respondent, in violation of the lease and the Alcoholic Beverage Control Law, served and sold alcohol without a license "over a prolonged period of time * * * habitually and consistently", so as to enable petitioners to terminate respondent's tenancy. We conclude that the arbitration clause is sufficiently broad to encompass the subject matter of this dispute.

We also conclude, as did Special Term, that the public policy of this State does not preclude arbitration of the present dispute.

In *Matter of Sprinzen (Nomberg) (supra,* pp 630-631), the Court of Appeals observed that,

"[d]espite this policy of according an arbitrator seemingly unfettered discretion in matters submitted to him by the consent of the parties, it is the established law in this State that an award which is violative of public policy will not be permitted to stand * * * The courts, however, must exercise due restraint in this regard, for the preservation of the arbitration process and the policy of allowing parties to choose a nonjudicial forum, embedded in freedom to contract principles, must not be disturbed by courts, acting under the guise of public policy, wishing to decide the dispute on the merits, for arguably every controversy has at its core some issue requiring the application, or weighing, of policy considerations. Thus, there are now but a few matters of concern which have been recognized as so intertwined with overriding public policy considerations as to either place them beyond the bounds of the arbitration process itself or mandate the vacatur of awards which do violence to the principles upon which such matters rest * * *

"[The] instances where courts will intervene in the arbitration process are, without apparent exception, cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement."

An agreement to arbitrate will not be presumed to be void as against public policy, if it may be construed in a manner which would make it consistent with the laws and valid (*Curtis v Gokey,* 68 NY 300, 304; see *Bigelow v Benedict,* 70 NY 202, 204-205; *Shedlinsky v Budweiser Brewing Co.,* 163 NY 437, 439).

Illustrative of the matters which have been held to be beyond the arbitrator's jurisdiction are those involving the enforcement of this State's antitrust laws, which have been recognized as representing "public policy of the first magnitude" (*Matter of Aimcee Wholesale Corp [Tomar Prods.],* 21 NY2d 621, 625), and the liquidation of insolvent insurance companies (*Matter of Knickerbocker Agency [Holz],* 4 NY2d 245). It has also been held that an arbitrator is without jurisdiction to award punitive damages (*Garrity v Lyle Stuart, Inc.,* 40 NY2d 354; *Matter of Publishers' Assn. [Newspaper & Mail Deliverer's Union],* 280 App Div 500), and that an agreement to arbitrate, when enforcement is sought by the lender, cannot divest the courts of their authority to determine whether a purported agreement is in fact a usurious loan, and thus illegal (compare *Durst v Abrash,* 22 AD2d 39, 44, affd 17 NY2d 445, with *Rosenblum v Steiner,* 43 NY2d 896, 898).

The broad statement has been made that disputes involving violations of the criminal law are similarly beyond the scope of arbitration (see, e.g., *Harris v Shearson Hayden Stone,* 82 AD2d 87, 92). Undeniably, the law has made criminal the sale of alcoholic beverages by any person who does not have an appropriate license (Alcoholic Beverage Control Law, § 130).

In our view, the controversy in the case at bar is not beyond the arbitrator's jurisdiction simply because violations of the Alcoholic Beverage Control Law have been

alleged and may be implicated (see *Matter of Binghamton Civ. Serv. Forum v City of Binghamton,* 44 NY2d 23). This is a private controversy between the parties, involving the construction of the terms of their lease. The relief sought by petitioners is the termination of respondent's tenancy. Arbitration would neither interfere with nor interdict the State's enforcement of the Alcoholic Beverage Control Law. Nor would arbitration impinge on the State's authority to impose the statutorily prescribed penalties if respondent were found to have violated the law. Moreover, we assume that the arbitrator "will not render an award which would require the doing of an act prohibited by law or offensive to public policy. If there is such an award, the court has the power to vacate it" (*Matter of National Equip. Rental* [*American Pecco Corp.*], 35 AD2d 132, 135, affd 28 NY2d 639).

Finally, petitioners' contention that, by resorting to a judicial forum on several occasions and by seeking pretrial discovery, respondent waived its right to arbitration is, under the circumstances at bar, without merit. The actions taken by respondent were "for protective relief in order to preserve the *status quo*" (*Preiss/Breismeister Architects v Westin Hotel Co.,* 56 NY2d 787, 789), or were taken in connection with claims "separate and distinct" from the subject matter of the dispute herein (*Denihan v Denihan,* 34 NY2d 307, 310).

Accordingly, Special Term's order, insofar as it adhered to its original determination denying the application to stay arbitration and staying the prosecution of petitioners' landlord-tenant action, should be affirmed.

TITONE, O'CONNOR and NIEHOFF, JJ., concur.

Appeal from the judgment dismissed. Said judgment was superseded by the order granting renewal.

Order affirmed insofar as reviewed.

Motion denied.

Respondent is awarded one bill of costs.