*845 OPINION OF THE COURT
Ute Wolff Lally, J.
Ordered that this application by petitioner pursuant to CPLR 7503 (b) for an order staying the arbitration requested by respondent is denied. Cross application by Local 808 for an order compelling arbitration is granted, and petitioner is directed to proceed to arbitration. Application by Local 808 for an order admitting Joshua D. Mclnerney, Esq. pro hac vice is granted.
The issue here arises out of the terms of a collective bargaining agreement effective June 1, 2003 through May 31, 2007 (the agreement). The dispute centers on employee contributions to health insurance premiums under section 4 of the agreement. Article 15, section 4 provides:
“The Village will continue to pay full medical insurance premiums only for EMPLOYEES in service as of December 31, 1988. Any new EMPLOYEES will be covered as follows: The VILLAGE will pay the premium for insurance in an amount equivalent to that in existence as of June 1, 1988 . . . thereafter, the VILLAGE will pay the first five (5%) percent increase in premium cost each year; thereafter, any further increase will be paid equally by the VILLAGE and by the EMPLOYEE. The VILLAGE is authorized to take a payroll deduction relative to premium increases for any such covered EMPLOYEE.”
The foregoing language has been included without change in five successive collective bargaining agreements between the parties, beginning in 1988. The dispute arises notwithstanding that there is an unambiguous provision in the agreement which admits of no controversy in interpretation if enforced as intended on an annual basis. As noted employees are responsible for one half of any annual increase in premium over five percent and a wage deduction for this amount is authorized.
The difficulty here is that the Village did not make any deductions since 1988 notwithstanding the contract provision permitting it to do so. It was not until May of 2005 that the Village advised Local 808 that it would begin taking deductions. Now apparently the Village seeks not only to make deductions in futuro under the provision, but also to deduct the uncollected premiums retroactively to 1988.
The Village seeks to prevent arbitration under the agreement on the grounds that permitting the contributions to remain *846 uncollected would constitute an unlawful municipal gift of public money. Thus the Village argues that public policy prohibits arbitration of the issue.
The public policy of the State of New York favors “arbitral resolution of public sector labor disputes” (Matter of City of Plattsburgh [Plattsburgh Police Officers Union AFSCME Local 82], 250 AD2d 327, 330 [3d Dept 1998], lv denied 93 NY2d 807 [1999]). The Court of Appeals has repeatedly emphasized that
“the role of the courts in deciding questions of arbitrability, especially in the labor relations field, is a constricted one and the Legislature itself has provided that a court may not ‘consider whether the claim with respect to which the arbitration is sought is tenable, or otherwise pass upon the merits of the dispute’ ” (Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County v Bellmore-Merrick United Secondary Teachers, 39 NY2d 167, 171 [1976] [emphasis supplied]).
Because arbitration is the preferred device for the resolution of labor controversies, public policy “frowns upon judicial attempts to resolve such disputes” (id.).
The constricted role of the court with respect to arbitration of public sector contract disputes has been outlined as follows:
“In considering an application for a stay of arbitration of a public sector labor dispute, a court must make two inquiries: (1) are the arbitration claims with respect to the particular subject matter of the dispute authorized under the Taylor Law (Civil Service Law art 14), and (2) whether the terms of the particular arbitration clause include the subject matter of the dispute sought to be arbitrated ... In answering the first inquiry, it must be determined if a statute, decisional law or public policy precludes a municipality and its employees from referring the dispute to arbitration” (Matter of City of Plattsburgh [Plattsburgh Police Officers Union AFSCME Local 82], 250 AD2d 327, 329 [1998], lv denied 93 NY2d 807 [1999], supra).
There are now “but a few matters of concern which have been recognized as so intertwined with overriding public policy considerations as to . . . place them beyond the bounds of the arbitration process itself’ (Mendelsohn v A & D Catering Corp., 100 AD2d 209, 214 [1984]). As noted, it is petitioner’s contention that arbitration of the conflict here is one of those few matters placed beyond the bounds of arbitration.
*847 The argument is rejected. Health benefits for current employees “can be a form of compensation, and thus a term of employment that is a mandatory subject of negotiation” (Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d 326, 331-332 [1998]; see also Syracuse Teachers Assn. v Board of Educ., Syracuse City School Dist., 42 AD2d 73, 75 [1973], affd 35 NY2d 743 [1974] [“compensation may take the form both of cash wages and ‘fringe benefits’ ”]). Under New York’s Taylor Law (Civil Service Law § 200 et seq.), a public employer is “statutorily obligated to negotiate in good faith with the bargaining representative of its current employees regarding the ‘terms and conditions of employment’ ” (Matter of Aeneas McDonald Police Benevolent Assn. at 331). Pursuant to this duty, “where a past practice between a public employer and its current employees is established, involving a mandatory subject of negotiation, the Taylor Law would bar the employer from discontinuing that practice without prior negotiation” (id.).
Petitioner claims that an arbitrator might violate public policy by making an unlawful gift of public money by permitting employees to retain the uncollected insurance premiums of the past 17 years and by prohibiting a unilateral change in practice prospectively. The argument is rejected as health benefits are a form of compensation and a term of employment, and it has been expressly held that the terms and conditions of employment “do not offend the constitutional bar against the gift of money by a local subdivision of government” (Matter of City of Amsterdam [Local 2825, Amsterdam Professional Firefighters], 114 AD2d 565, 566 [1985]). Thus, so long as the issue before the arbitrator is the amount of insurance premiums due from employees, the subject matter and outcome will not “offend the constitutional bar against [a] gift of money” (id.) by the Village. Accordingly, as petitioner has shown no grounds which would bar arbitration concerning the subject matter or bar a possible award by the arbitrator concerning the current collective bargaining dispute, the application to stay arbitration is denied and the cross application to compel arbitration is granted.