422 So.2d 986 (1982)
Robert E. HACKETT, M.D., and Robert E. Hackett, M.D., P.A., Appellants,
v.
METROPOLITAN GENERAL HOSPITAL, a Florida Corporation, Appellee.
No. 82-837.
District Court of Appeal of Florida, Second District.
November 24, 1982.
William C. Ballard of Fisher & Sauls, P.A., St. Petersburg, for appellants.
Charlie Luckie, Jr., of Dayton, Sumner, Luckie & McKnight, P.A., Dade City, for appellee.
GRIMES, Judge.
This appeal from an order dismissing a complaint involves the applicability of the Florida Antitrust Act of 1980 and section *987 395.0653, Florida Statutes (1981), to a private hospital.
According to the complaint, Dr. Hackett is a medical doctor and a board certified urologist who practices in Pinellas County. Dr. Hackett applied for staff privileges at Metropolitan General Hospital, a private, nonprofit hospital located in Pinellas Park. The hospital participates in the countywide emergency medical service in which all persons located within the hospital's district who require emergency medical treatment are transported to that hospital for treatment. At the time of Dr. Hackett's application, the medical staff of the hospital consisted of only osteopathic physicians. The medical staff recommended to the board of trustees that Dr. Hackett's application for staff privileges be denied on the basis that the hospital had adequate urological coverage. The board of trustees approved the medical staff recommendation and denied Dr. Hackett's application on January 30, 1980. Dr. Hackett then appealed the denial of staff privileges. On November 26, 1980, the board of trustees denied his appeal on the ground that the board members felt that he "would be a disruptive force on the staff."
The complaint further states that the hospital does not have adequate urological coverage because the only member of the staff practicing urology is an osteopathic physician who is not board certified in urology. The five other hospitals in the Pinellas County area offering emergency medical service each has at least two urologists on the staff, at least one of whom is board certified. Dr. Hackett alleges that he was denied staff privileges by reason of a conspiracy between the hospital through its board of trustees and the osteopathic physicians on the staff to perpetuate a monopoly for the one staff member practicing urology and to limit the staff to osteopathic physicians, thereby insulating them from competition by medical doctors. Dr. Hackett asserts that in denying his request for staff privileges the hospital violated the Florida Antitrust Act of 1980 and section 395.0653, Florida Statutes (1981). He requested an order mandating his admission to the staff, attorney's fees and other relief.
In the order dismissing the complaint with prejudice, the court stated:
[I]t being the opinion of this Court that the decision of whether or not to admit a doctor to the staff of a private hospital is a matter to be determined solely in the discretion of the Board of Directors or Trustees of such private hospital corporation that the Florida Anti-Trust Act (Chapter 452 [sic] Florida Statutes 1981) and the Florida Hospital Licensure Act (Chapter 395 Florida Statutes 1981) do not give rise to a cause of action by a doctor to require a private Florida hospital to admit him to its medical staff regardless of whether: (1) the hospital's motivation was to restrict competition among doctors in the furnishing of medical services; (2) the availability of a specialized medical service in the hospital and in the emergency medical service district it serves is limited to one doctor and is inadequate; (3) the rejected applicant was rejected on the basis of being a medical doctor as opposed to an osteopathic physician.
On appeal, the hospital's major defense against Dr. Hackett's antitrust arguments is that the provisions of the 1980 act are irrelevant because Dr. Hackett applied for staff privileges before the effective date of the act. Thus, the hospital relies upon our interpretation of prior Florida antitrust laws in Moles v. White, 336 So.2d 427 (Fla. 2d DCA 1976). In that case we said, "Florida case law has not yet determined operation of a hospital or the practice of medicine to be within the ambit of this statute, and we are not prepared to hold that such was the intention of the legislature." 336 So.2d at 429.
The revision of Florida's antitrust statutes, known as the Florida Antitrust Act of 1980, became effective on October 1, 1980. Dr. Hackett's application for admission to the staff and the initial denial thereof took place prior to that date. However, Dr. Hackett had to file an appeal so as to exhaust his administrative remedies prior to *988 going to court, and the act became effective at a time when the board of trustees had not yet acted upon his appeal. We are convinced that the controlling law is that which was in effect on the date the trustees ultimately rejected Dr. Hackett's appeal. Hence, we must consider, as did the trial court, the applicability of the 1980 legislation.
Section 542.18, Florida Statutes (1981), provides that "[e]very contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." This statute was patterned after section 1 of the Sherman Antitrust Act (15 U.S.C. § 1) which prohibits "every contract, combination ... or conspiracy in restraint of trade or commerce among the several states." In fact, the Florida legislature declared that the purpose of the act was "to complement the body of federal law prohibiting restraints of trade or commerce in order to foster effective competition." § 542.16, Fla. Stat. (1981).
Section 542.17, Florida Statutes (1981), defines "trade or commerce" to include "any economic activity of any type whatsoever involving any commodity or service whatsoever." The language of the statute is clearly broad enough to encompass a restraint upon the practice of medicine. Moreover, the federal courts have consistently interpreted the Sherman Act[1] to include within its prohibitions the practitioners of a learned profession. American Medical Association v. United States, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1943); Williams v. St. Joseph's Hospital, 629 F.2d 448 (7th Cir.1980); Ballard v. Blue Shield of Southern West Virginia, Inc., 543 F.2d 1075 (4th Cir.1976). The allegations of the complaint, if proven, demonstrate a conspiracy[2] which would fall within the scope of the Florida Antitrust Act of 1980.
The supreme court's decision in West Coast Hospital Association v. Hoare, 64 So.2d 293 (Fla. 1953), that a private hospital had the right to exclude a physician from practicing therein for any reason is not controlling. In that case, the court recognized that the legislature had the power and authority to regulate private hospitals but pointed out that it had not yet done so. While the Florida Antitrust Act of 1980 is not specifically directed to private hospitals, its provisions are sufficiently broad to cover them when their activities are alleged to have brought about an illegal restraint of trade or commerce.
Dr. Hackett also contends that he was denied staff privileges in violation of section 395.0653(1), Florida Statutes (1981), which reads:
(1) Any hospital licensed under this chapter in considering and acting upon applications for staff membership or professional clinical privileges shall not deny the application of a qualified doctor of medicine licensed under chapter 458, doctor of osteopathy licensed under chapter 459, doctor of dentistry licensed under chapter 466, or doctor of podiatry licensed under chapter 461 for such staff membership or professional clinical privileges within the scope of his respective licensure solely because the applicant is licensed under any of said chapters.
The hospital's only response to this contention is that the complaint did not specifically say that Dr. Hackett was denied staff privileges "solely" because he was a medical doctor. Notwithstanding, we believe that the complaint as a whole sufficiently alleges the denial of staff privileges for the violation of section 395.0653. From a substantive standpoint, we cannot see any basis for the court's ruling that the statute is totally inapplicable. Chapter 395 deals *989 with the licensing and regulation of private as well as public hospitals. Section 395.0653 obviously reflects a legislative intent that a doctor should not be denied staff privileges simply because of the particular branch of practice he pursues. If a doctor cannot obtain judicial relief for violation of the statute, its provisions will be rendered meaningless.
Nothing we have said in this opinion should be construed as a limitation upon the broad discretion which any hospital must have in determining who should be granted staff privileges. See North Broward Hospital District v. Mizell, 148 So.2d 1 (Fla. 1962). We hold only that the allegations of this complaint are sufficient to state a cause of action for relief under the Florida Antitrust Act of 1980 and section 395.0653, Florida Statutes (1981).
We reverse the order dismissing the complaint and remand the case for further proceedings consistent with this opinion.
OTT, C.J., and HOBSON, J., concur.
NOTES
[1] Actually, the Florida statute is broader than the comparable provision of the Sherman Antitrust Act because it expressly brings "services" within the definition of "trade or commerce."
[2] Ordinarily, a corporation cannot conspire with its own directors, officers or employees. However, an exception to this rule exists where, as here, the coconspiring corporate agents are alleged to have an independent personal stake in achieving the object of the conspiracy. H & B Equipment Co. v. International Harvester, 577 F.2d 239 (5th Cir.1978); Greenville Publishing Co. v. Daily Reflector, Inc., 496 F.2d 391 (4th Cir.1974).