450 So.2d 514 (1984)
William I. SABATES, M.D.; William I. Sabates, M.D., P.A., Petitioners,
v.
INTERNATIONAL MEDICAL CENTERS, INC., a Health Maintenance Organization and a Florida Corporation for Profit; Associated Doctors' Hospitals, Inc., a Florida Corporation, D/B/a International Hospital; Miguel Recarey, Jr., Respondents.
No. 83-1949.
District Court of Appeal of Florida, Third District.
April 3, 1984.
Rehearing Denied June 13, 1984.
*515 Henry T. Courtney, Miami, for petitioners.
Robert L. Koeppel and Wayne Kaplan, Hayt, Hayt & Landau and Sean L. Fisher, Miami, for respondents.
Before HUBBART, NESBITT and DANIEL S. PEARSON, JJ.
*516 DANIEL S. PEARSON, Judge.
The petition for writ of certiorari filed by Sabates[1] asserts that the trial court departed from the essential requirements of the law by ordering that (1) Sabates' claim against International Medical Centers, Inc. (IMC) alleging a violation of the state antitrust statute be submitted to arbitration; (2) Sabates' claim against IMC alleging a violation of the civil theft statute be submitted to arbitration; and (3) all proceedings in respect to the claims against the other defendants, International Hospital and Miguel Recarey, Jr., be stayed and abated pending the completion of the arbitration with IMC.[2]

I.

The Alleged Facts
Dr. Sabates, on behalf of his professional association, contracted with IMC to provide ophthalmologic services for IMC patients. An express condition of Sabates' employment was that he was to meet the qualifications and standards for staff membership at International Hospital. Yet despite IMC's assurances that Sabates' application for permanent staff privileges at the hospital would be promptly processed, his temporary privileges were allowed to expire resulting in IMC terminating its contract with Sabates. According to Sabates, none of this was fortuitous, since Miguel Recarey, Jr., who, as president of IMC, entered into the contract with Sabates, also controlled the actions of International Hospital as its president.

II.

The Proceedings
The contract between Sabates and IMC provided that "all disputes and claims arising in connection with this Agreement" shall be settled by arbitration. Acknowledging that his claims of breach of contract and fraud against IMC were properly the subject of arbitration, Sabates initiated arbitration proceedings as to these claims. Pertinent here, Sabates' lawsuit charged International Hospital with interfering with his contract with IMC and charged all three defendants with a violation of the Florida Antitrust Act of 1980, Ch. 542, Fla. Stat., and civil theft in violation of Section 812.014, Florida Statutes (1981).[3] All counts against IMC were ordered submitted to arbitration; the proceedings on all counts against the hospital and Recarey were stayed.

III.

The Antitrust Claim
The well-recognized policy favoring the enforcement of agreements to arbitrate, see, e.g., William Passalacqua Builders, Inc., v. Mayfair House Ass'n, 395 So.2d 1171 (Fla. 4th DCA 1981) (on rehearing); Lapidus v. Arlen Beach Condominium Ass'n, 394 So.2d 1102 (Fla. 3d DCA 1981); Raymond, James & Associates, Inc. v. Maves, 384 So.2d 716 (Fla. 2d DCA 1980); Merkle v. Rice Construction Co., 271 So.2d 220 (Fla. 2d DCA), cert. denied, 274 So.2d 234 (Fla. 1973), is not without its exceptions. Thus, where legislation clearly mandates that the dispute be resolved in a judicial forum, the policy favoring *517 arbitration will yield. See Shearson, Hammill & Co. v. Vouis, 247 So.2d 733 (Fla. 3d DCA), cert. denied, 253 So.2d 444 (Fla. 1971) (where agreement to arbitrate inconsistent with provision of Florida Securities Law preserving the right to bring an action in court, securities law will control); Young v. Oppenheimer & Co., Inc., 434 So.2d 369 (Fla. 3d DCA 1983). See also Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). But see Raymond, James & Associates, Inc. v. Maves, 384 So.2d 716.
Although the Florida Antitrust Act of 1980, unlike the Florida Securities Act, compare § 542.30, Fla. Stat. (1981), with § 517.241(2)-(4), Fla. Stat. (1981), contains no express provision preserving the right to bring an action in the courts, nonetheless, because cases involving antitrust violations are generally considered to be "of a character inappropriate for enforcement by arbitration," American Safety Equipment Corp. v. J.P. Maguire & Co., 391 F.2d 821, 825 (2d Cir.1968), as will be seen, the policy favoring arbitration gives way to the policy that antitrust claims are better suited to be heard in the courts.
To date, no Florida court has addressed the question of the arbitrability of state antitrust claims and, it follows, there is not as yet any announced state policy that such claims should or should not be the subject of arbitration. There is, however, abundant federal authority dealing with the subject of the arbitrability vel non of comparable federal antitrust claims, to which authority we must give "due consideration and great weight" in construing this state's antitrust law. § 542.32, Fla. Stat. (1981). See § 542.16, Fla. Stat. (1981) (purpose of Florida Antitrust Act is to complement federal antitrust legislation); Hackett v. Metropolitan General Hosp., 422 So.2d 986 (Fla. 2d DCA 1982).
Under federal law, antitrust claims are held to be not subject to arbitration. See, e.g., Applied Digital Technology, Inc. v. Continental Casualty Co., 576 F.2d 116 (7th Cir.1978); Cobb v. Lewis, 488 F.2d 41 (5th Cir.1974); A. & E. Plastik Pak Co. v. Monsanto Co., 396 F.2d 710 (9th Cir.1968); American Safety Equipment Corp. v. J.P. Maguire & Co., 391 F.2d 821; Hunt v. Mobil Oil Corp., 410 F. Supp. 10 (S.D.N.Y. 1975), aff'd, 550 F.2d 68 (2d Cir.), cert. denied, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). The oft-cited reasons underlying these uniform holdings are (1) because a wide range of public interests are affected by private antitrust claims, a "claim under the antitrust laws is not merely a private matter," American Safety Equipment Corp. v. J.P. Maguire & Co., 391 F.2d at 826; (2) the complexity of the issues and extensiveness of the evidence generally involved in antitrust litigation make resolution of these claims more appropriate for the judicial forum, id. at 827; (3) it is unwise to allow commercial arbitrators, "frequently men drawn for their business expertise ... to determine these issues of great public interest," id.; see Applied Digital Technology, Inc. v. Continental Casualty Co., 576 F.2d 116; Cobb v. Lewis, 488 F.2d 41, 47; and (4) because arbitrators are not bound by rules of law and need not give reasons for their rulings, there is no way to insure consistency of interpretation of statutory law or application of arbitration awards. Aimcee Wholesale Corp. v. Tomar Products, Inc., 21 N.Y.2d 621, 289 N.Y.S.2d 968, 237 N.E.2d 223 (1968). Giving, as we must, "due consideration and great weight" to these authorities, and finding their reasoning to apply with equal force to any antitrust claim brought under our state law, we conclude that Sabates' antitrust claim under the Florida Statute is not a proper subject for arbitration and that such claim must be judicially determined.[4]

*518 IV.

The Civil Theft Statute
Other, but less uniform, exceptions to the policy favoring the enforcement of agreements to arbitrate arise where public policy is said to require that a matter in issue be determined by a court. Thus, it has been held that only a court should be permitted to award punitive damages, Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976); determine whether an otherwise arbitrable agreement is usurious, compare Durst v. Abrash, 22 A.D.2d 39, 44, 253 N.Y.S.2d 351, 356 (App.Div. 1964), aff'd, 17 N.Y.2d 445, 266 N.Y.S.2d 806, 213 N.E.2d 887 (1965), with Rosenblum v. Steiner, 43 N.Y.2d 896, 898, 403 N.Y.S.2d 716, 718, 374 N.E.2d 610, 611 (1978); or determine rights under an agreement calling for arbitration where distribution of an estate is involved, In re Will of Jacobovitz, 58 Misc.2d 330, 295 N.Y.S.2d 527 (Surrogate Ct. 1968). Similarly, civil rights claims, Wertheim & Co. v. Halpert, 48 N.Y.2d 681, 421 N.Y.S.2d 876, 877, 397 N.E.2d 386 (1979), child custody cases, Nestel v. Nestel, 38 A.D.2d 942, 331 N.Y.S.2d 241 (App.Div. 1972), and criminal violations, Application of Goldmar Hotel Corp., 283 A.D. 935, 130 N.Y.S.2d 615 (App.Div. 1954); 16 Williston on Contracts § 1918 (3d ed. 1976), have been held to fall outside the scope of the arbitration process. See generally Sprinzen v. Nomberg, 46 N.Y.2d 623, 415 N.Y.S.2d 974, 389 N.E.2d 456 (1979). It must be noted, however, that:
"the preservation of the arbitration process and the policy of allowing parties to choose a non-judicial forum, embedded in freedom to contract principles, must not be disturbed by courts, acting under the guise of public policy, wishing to decide the dispute on its merits, for arguably every controversy has at its core some issue requiring the application, or weighing, of policy considerations." Sprinzen v. Nomberg, 46 N.Y.2d at 630, 415 N.Y.S.2d at 977, 389 N.E.2d at 459.
It is clear, of course, that the civil theft statute, remedial in its purpose and expansive in its coverage, embodies public policy. However, in contrast to the Antitrust Act, the effect of a violation of the civil theft statute upon the public is, at most, incidental; the issue of what constitutes a violation of the civil theft statute is neither complex nor beyond the ken of arbitrators; and the statute itself contains no indication that the Legislature intended such claims to be within the exclusive province of the courts or, as in the case of the Antitrust Act, that it be interpreted in accordance with an existing body of case law which reserved such matter for the courts. Thus, even though the civil theft statute has at its core a criminal violation and provides for the imposition of treble damages where a violation is found, those factors are hardly sufficient to overcome the parties' agreement to arbitrate or to bring this particular statutory violation within that narrow class of cases that have been excepted from arbitration on public policy grounds. Compare Mendelsohn v. A & D Catering Corp., 119 Misc.2d 581, 464 N.Y.S.2d 331 (Sup.Ct. 1983); National Equipment Rental Ltd. v. American Pecco Corporation, 35 A.D.2d 132, 314 N.Y.S.2d 838 (App.Div. 1970), with Kingswood Management Corp. v. Salzman, 272 A.D. 328, 70 N.Y.S.2d 692 (App.Div. 1947); In re Kramer & Uchitelle, Inc., 288 N.Y. 467, 43 N.E.2d 493 (1942); Application of Goldmar Hotel Corp., 283 A.D. 935, 130 N.Y.S.2d 615. We conclude, therefore, that Sabates' civil theft claim is properly the subject of arbitration.

V.

The Stay of Judicial Proceedings
Section 682.03(3), Florida Statutes (1981), provides that

*519 "Any action or proceeding involving an issue subject to arbitration under this law shall be stayed if an order for arbitration or an application therefor has been made under this section, or, if the issue is severable, the stay may be with respect thereto only... . (emphasis supplied).
The issue subject to arbitration between Sabates and IMC is essentially whether IMC breached its contract with Sabates and whether that breach amounted to a violation of the civil theft statute. The question now before us is how, if at all, the resolution of this issue in arbitration will affect the interference with a contractual relationship claim against International Hospital, the civil theft claim against International Hospital and Recarey, and the antitrust claim against IMC, International Hospital and Recarey. If the resolution of the arbitrable claims against IMC will obviate the need for further litigation of the claims pending in court, then it is clear that these latter claims involve an issue subject to arbitration; but if the resolution of the arbitrable claims will have no effect upon the claims pending in court, then the issue in arbitration is severable, and a stay of the claims pending in court is not required. See Post Tensioned Engineering Corp. v. Fairways Plaza Associates, 429 So.2d 1212 (Fla. 3d DCA 1983).
We have little difficulty concluding that the claim against International Hospital for interference is totally independent of the claims against IMC in arbitration. Whether or not IMC is found to have breached its contract with Sabates will in no way relieve the hospital of its potential liability for interfering with such contract. See United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla. 1979); Young v. Pottinger, 340 So.2d 518 (Fla. 2d DCA 1976); Allen v. Leybourne, 190 So.2d 825 (Fla. 3d DCA 1966). By the same reasoning, we arrive at a different result in respect to the civil theft claims against International Hospital and Recarey. If it is found in arbitration that there has been no wrongful appropriation of any property right of Sabates and no violation of the civil theft statute (a result which must follow from a finding that there was no breach of contract, and a result which may follow notwithstanding a finding that the contract was breached), there can be no claim under the civil theft statute against the hospital and Recarey which remains to be adjudicated.[5] Therefore, the civil theft claim against these two defendants was properly stayed awaiting the outcome of arbitration.
Finally, we conclude that the antitrust claims will necessarily survive any decision in arbitration and are therefore severable from the arbitrable issues. Implicit in this conclusion is that the antitrust claims are not dependent upon the contract claims, so as to require that the antitrust claims be stayed pending the outcome of arbitration.[6]Cf. Sibley v. Tandy Corp., *520 543 F.2d 540 (5th Cir.1976) (where the very existence of the plaintiff's federal securities act claim that defendant's oral representations fraudulently induced the plaintiff to enter into the written contract is predicated upon the plaintiff's claims under the written contract being decided adversely to the plaintiff in arbitration, securities act claim is dependent and must be stayed pending outcome of arbitration). Absent this dependency, there would appear to be no justification for staying the progress in court of the antitrust claims and no impediment to these claims, along with the claim against International Hospital for interference with contractual relations, proceeding to trial simultaneously with the arbitration. See Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679 (5th Cir.1976).
Accordingly, the petition for writ of certiorari is granted in part and denied in part. The order under review insofar as it referred the antitrust claim against IMC to arbitration is quashed, and the stay of proceedings on that claim and the claim for interference with contractual relations is vacated. In all other respects, the order shall remain in full force and effect.
Certiorari is granted in part; denied in part.
NOTES
[1] Dr. Sabates and William I. Sabates, P.A., his professional association and co-petitioner, will be referred to as Sabates.
[2] The respondents contend that although certiorari is the proper vehicle to challenge a lower court order denying a motion to compel arbitration, an order granting a motion to compel arbitration, being non-final, must await review until an appeal is taken from an order under Section 682.20(1)(c), Florida Statutes (1981), confirming an arbitration award. Plainly, orders compelling arbitration and staying court proceedings pending the outcome of arbitration are reviewable by certiorari. Hansen v. Dean Witter Reynolds, Inc., 408 So.2d 658 (Fla. 3d DCA 1981), pet. for rev. denied, 417 So.2d 328 (Fla. 1982); see Laquer v. Smith, Barney, Harris, Upham & Co., 446 So.2d 1119 (Fla. 3d DCA 1984); Walter L. Keller & Associates, P.A. v. Health Management Foundation, 438 So.2d 1076 (Fla. 2d DCA 1983); Marthame Sanders & Co. v. 400 West Madison Corp., 401 So.2d 1145 (Fla. 4th DCA 1981); King v. Thompson & McKinnon, Auchincloss, Kohlmeyer, Inc., 352 So.2d 1235 (Fla. 4th DCA 1977).
[3] Sabates' amended complaint contained other counts which are not the subject of his petition for writ of certiorari.
[4] The broad definition of "trade or commerce" in the Florida Antitrust Act, § 542.17(4), Fla. Stat. (1981), that is, "any economic activity of any type whatsoever involving any commodity or service whatsoever," has been held to encompass a restraint upon the practice of medicine of the type here alleged. See Hackett v. Metropolitan General Hosp., 422 So.2d 986. We think it obvious that any unlawful restraint upon the delivery of medical services is not merely a private matter and that, therefore, the rationale of the federal cases is applicable to the present case. Cf. Greenleaf Engineering & Construction Co. v. Teradyne, Inc., 15 Mass. App. Ct. 571, 447 N.E.2d 9 (App.Ct. 1983) (refusing to apply federal decisions holding antitrust claims non-arbitrable where allegations of unfair and deceptive trade practices in violation of state law were primarily related to private claim).
[5] The question of whether a cause of action for civil theft lies under the circumstances of this case, even if the contract is found to have been breached, is not before us and remains to be determined.
[6] Nor are the antitrust claims so inextricably intertwined with the breach of contract issues in arbitration as to make it likely that the arbitrators, in deciding the breach of contract issue, would inevitably wander into "the thicket of complex antitrust issues." See Hunt v. Mobil Oil Corp., 410 F. Supp. 10, 26 (S.D.N.Y. 1975), aff'd, 550 F.2d 68 (2d Cir.), cert. denied, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). In such a case, where the antitrust issues are said to permeate the arbitrable issues, courts have stayed arbitration and proceeded to determine the antitrust issues, see Hunt v. Mobil Oil Corp., 444 F. Supp. 68 (S.D.N.Y. 1977); Applied Digital Technology, Inc., 576 F.2d 116; or denied arbitration even of the arbitrable claims "in order to protect the jurisdiction of the federal court and avoid any possible preclusive effect" of the arbitrators' decision, see Belke v. Merrill, Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1026 (11th Cir.1982); Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169 (11th Cir.1982); but see Dickinson v. Heinold Securities, Inc., 661 F.2d 638 (7th Cir.1981) (permeation doctrine merely authorizes court to control the order of adjudications, but does not authorize court to adjudicate arbitrable claims). The question before us, however, is the propriety of the trial court's stay of the judicial proceedings, not of arbitration.