**Frank PALAZZO, Plaintiff-Appellant,**

v.

**GULF OIL CORPORATION, a Pennsylvania Corporation, Defendant-Appellee.**

No. 83–3219.

United States Court of Appeals, Eleventh Circuit.

July 5, 1985.

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

**1382**

Herbert Schwartz, Gainesville, Fla., for plaintiff-appellant.

Harry Kemker, Keith E. Rounsaville, Tampa, Fla., for defendant-appellee.

Before RONEY, and TJOFLAT, Circuit Judges, and BROWN *, Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

This case involves the antitrust claims of three parties: Frank Palazzo, Tina Palazzo, and Advanced Sales Corp. (Advanced). Plaintiffs Frank Palazzo and Tina Palazzo co-owned business property leased to Advanced, and were president and vice-president, respectfully, of Advanced when this suit was filed. Plaintiff Advanced is an independent, non-branded wholesale purchaser and retailer of gasoline.

In this appeal, Frank Palazzo, a layman proceeding *pro se*, seeks to assert the claims of both Advanced and Tina. He also asks us to recognize his right to recover damages in his individual capacity for anti-competitive activity allegedly directed at Advanced's business. After reviewing the record we conclude first that, due to the general rule requiring corporations to be represented by counsel, Frank may not represent the corporation in his *pro se* capacity. Second, we decide that the individual claims of Frank and Tina are not the type for which recovery is available under the applicable antitrust laws. We thus affirm the district court's Order of Dismissal and Entry of Summary Judgment.

*Background*

In 1973, because of a shortage of gasoline, Congress enacted the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 751, *et seq.* which regulated the sale of gasoline by refiners, such as defendant, Gulf Oil Corp. Regulations promulgated under the EPAA were designed to ensure that all customers of gasoline suppliers received a monthly volume of gasoline proportionate to the amounts they had received in 1972, before any shortages occurred.

As a relatively new retailer of gasoline, Advanced, which began operations in 1974, had no 1972 supplier. Thus, under applicable regulations, on March 7, 1974, the regional administrator of the Federal Energy Agency (FEA) designated defendant Gulf as the supplier for Advanced, with an initial base period volume of 1 million gallons per year. In April of 1974, apparently after objections filed with the FEA by Gulf and competitors of Advanced, this base period volume was reduced to 185,000 gallons per year. In August of 1974, however, this reduction order was stayed. In January, 1975, Advanced's supply volume was finally adjusted to 800,000 gallons per year.

Gulf proceeded to supply Advanced with gas as required by the FEA. Advanced, however, objected strenuously to the price at which the gas was supplied. Gulf charged Advanced the same dealer tank wagon price for gasoline as it charged its branded, Gulf retail dealers. Advanced argued that as a non-branded, independent retailer, it should receive a lower price for its gasoline, since it did not enjoy the benefits, such as credit cards and name-brand products, available to branded dealers. Gulf responded that the price being charged was appropriate under the applicable regulations, and that the regulations in

---

* Honorable John R. Brown, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

fact prohibited Gulf from establishing a different price for Advanced than it had for other dealers in the area.

Over the next two years, Advanced repeatedly objected to the price at which Gulf supplied its gasoline. During this time, Advanced purchased some of its gasoline from Gulf, but also made recurrent purchases from other wholesalers on the "spot market." Unable to resolve its pricing problems with Gulf, Advanced requested a change of supplier. The FEA granted this request and on May 6, 1977, Gulf was relieved of its supply obligation to Advanced.

In December of 1977, Advanced made a written demand to Gulf for refund of the overcharges alleged to have resulted from Gulf's pricing policies. Gulf refused any refund and in March of 1978, the three plaintiffs, Frank Palazzo, Tina Palazzo and Advanced, filed their complaint against defendant. The complaint, as amended in July of 1978, included five counts, and alleged violations of the EPAA, the Economic Stabilization Act of 1970, the Sherman Act, the Clayton Act and the Robinson-Patman Act, and Florida state antitrust laws. The various counts sought recovery for damages to Advanced, as well as asserting claims on behalf of Frank and Tina individually.

A trial date was initially set for January of 1981. However, such a quick disposition was not to be in this case. In late 1980, the three plaintiffs moved for a continuance of trial in order that pending motions could be resolved. In February of 1981, trial was rescheduled for the first week of February 1982.

In April of 1981, the attorney representing Frank, Tina and Advanced moved for leave to withdraw as attorney of record on grounds that his retainer agreement only contemplated representation through the preliminary stages of the lawsuit, and that the intervening divorce of Frank and Tina had created a conflict of interest between them.

Without objection from defendants, the district court, on May 12, 1981, granted the motion, stating: "The plaintiffs shall have thirty (30) days ... to secure substitute counsel (or the individual plaintiffs may file and serve a notice of proceeding *pro se*)...." Thirty-one days later, Frank Palazzo filed a "Notice of *Pro Se* Appearance," and moved for permission to appear as "Counsel *Pro Se* for the Plaintiffs."

Discovery proceeded, and on December 22, 1981, defendant Gulf moved for summary judgment as to all counts. On March 16, 1982, the case was referred to a United States Magistrate for disposition of all pending motions, and for his report and recommendation. On March 29, 1982, the magistrate allowed plaintiffs 10 days to respond to defendant's motion for summary judgment. He also ruled that the court would not entertain any submissions on behalf of the corporate plaintiff Advanced except those by a licensed attorney. Nevertheless, on April 13, more than 10 days later, plaintiff Frank Palazzo responded on behalf of all plaintiffs, and also filed a "Motion to Recognize Frank Palazzo as Plaintiff in all Counts and Proceed *Pro Se*." In that motion, Frank stated that Tina's claims had been assigned to him by virtue of a property settlement agreement, and that, as the largest creditor and stockholder of Advanced, he was entitled to represent its claims as well.

On November 16, 1982, the magistrate issued his Report and Recommendation, in which he recommended (1) that the claims of Advanced in Counts I, II, III, and V be dismissed for failure to comply with Local Rule 2.03 requiring corporations to be represented by counsel; (2) that Tina Palazzo be dismissed as a party for failure to prosecute; and (3) that summary judgment be entered against Frank Palazzo in favor of Gulf on his claims in Counts IV and V.

On December 28, 1982, Frank Palazzo filed objections to the findings of the magistrate, and attached an affidavit stating that Advanced, the corporation, had transferred its claims to him and that he was therefore entitled to represent the corporate claims *pro se*. On January 31, 1983, however, the district court adopted the magistrate's recommendations, and entered the Order of Dismissal and Final Judgment from which this appeal has been taken.

On February 22, 1983, Frank Palazzo moved, pursuant to F.R.A.P. 4(a)(5), for an extension of time on behalf of all plaintiffs to appeal the district court's order. On February 24, 1983, the judge granted Frank Palazzo alone until March 18, 1983, to file a notice of appeal. The judge also stated, as to the other plaintiffs, "the plaintiff, Frank Palazzo, may not represent anyone other than himself." Notwithstanding this order, on March 3, 1983, Frank Palazzo, *pro se*, filed a notice of appeal on behalf of Advanced and Tina, as well as himself, to the Temporary Emergency Court of Appeals (TECA) from the district court's judgment on Counts I, II and IV, containing plaintiff's claims under the EPAA.[1] On March 18, 1983, he appealed the same judgment as to all counts to this court.

On September 9, 1983, TECA affirmed the district court's judgment as to Counts I, II and IV. As to the claims of Advanced in Counts I and II, and Tina in Count IV, the TECA agreed with the district court that their dismissal was proper. The court stated that, even assuming Frank could otherwise properly assert these claims, he had failed to do so within the 30 day limit set by the lower court in its order of May 12, 1981. The court also found no basis for Frank Palazzo's individual claims (in Count IV) for violations of the EPAA and the Economic Stabilization Act. The court observed that there was no support for the proposition that Frank, by virtue of his positions as officer, stockholder and creditor of Advanced, was entitled to recover in his individual capacity for alleged overcharges to the corporation.

On April 9, 1984, this court entered orders (1) dismissing the appeals of Tina Palazzo and Advanced for failure to timely file appellate briefs; (2) dismissing all claims of Frank Palazzo arising out of Counts I, II and IV (the claims based on the EPAA); and (3) granting Frank Palazzo leave to file a supplemental brief as to his right to prosecute the claims arising out of Counts III and V. Count III asserts a claim by Advanced for damages arising from alleged violations of the United States antitrust laws. Count V seeks recovery on behalf of Frank, Tina and Advanced for alleged violations of the Florida antitrust laws.

Frank Palazzo, proceeding *pro se*, has raised numerous issues on appeal. In our view, however, the only important questions concern whether Frank may proceed *pro se* on behalf of the other named plaintiffs, and whether his individual claims in this action have any appealable merit. We discuss these questions as they relate to the remaining counts of the complaint.[2]

## Count III

Despite being repeatedly admonished to secure counsel to pursue the corporate claims in Count III of the complaint, plain-

---

1. TECA was given jurisdiction of appeals from the district courts in cases arising under the EPAA by virtue of § 5(a)(1) of the EPAA, *as amended,* 15 U.S.C.A. § 754(a)(1) (West 1976) incorporating § 211(b)(2), Economic Stabilization Act of 1970, 12 U.S.C.A. § 1904 note (West 1980). *See infra* note 2.

2. In a motion to this court which has been carried with the case, plaintiff Frank Palazzo has requested an order addressing any possible jurisdictional conflict between this court and TECA regarding the disposition of the various counts in the complaint. As discussed, *supra,* Counts I, II and IV, raising issues under the EPAA, were appealed to and dismissed by TECA, leaving for decision Counts III and V, which are before us today.

The issues on appeal have been properly divided between the TECA and this court. TECA was granted jurisdiction of appeals from the district courts in cases arising under the EPAA or under regulations or orders issued thereunder. *See supra* n. 1. The TECA has expressly disclaimed jurisdiction over non-EPAA claims in cases where the complaint contains at least one EPAA claim. *Spinetti v. Atlantic Richfield Co.,* 522 F.2d 1401 (Temp.Emer.Ct.App.1975). The circuit courts have also recognized that TECA's limited jurisdiction has resulted in a system of bifurcated appeals when EPAA and non-EPAA claims are involved in the same action. *See, e.g., United States v. Wyatt,* 680 F.2d 1080 (5th Cir.1982). The disposition of the various issues by TECA and this court will not serve to frustrate "the uniform interpretation of the allocation scheme ... [nor] serve to undermine the prompt resolution of [EPAA] questions." *McWhirter Dist. Co. v. Texaco, Inc.,* 668 F.2d 511, 526 n. 23 citing *Bray v. United States,* 423 U.S. 73, 75, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975). Plaintiff's motion is therefore denied.

tiff Frank Palazzo has continued in his efforts to represent the corporation *pro se.* He maintains that, by virtue of the corporation's assignment of its claims to him individually, he may assert these corporate claims without the benefit of counsel. We disagree.

■ The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se,* and must be represented by counsel. *Commercial and Railroad Bank of Vicksburg v. Slocomb,* 39 U.S. (14 Pet.) 60, 10 L.Ed. 354 (1840); *In re K.M.A., Inc.,* 652 F.2d 398 (5th Cir. Unit B 1981); *Southwest Exp. Co. v. I.C.C.,* 670 F.2d 53 (5th Cir. 1982). The *Southwest* court cited a leading case discussing the practical and historical bases for the rule. Thus, in *Turner v. American Bar Assn.,* 407 F.Supp. 451, 476 (N.D.Ind.1975), *aff'd. sub nom. Taylor v. Montgomery,* 539 F.2d 715 (7th Cir.1976), the court observed, in discussing 28 U.S.C. § 1654 (permitting individuals to proceed *pro se* in federal courts);

Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally. With regard to these two types of business associations, the long standing and consistent court interpretation of § 1654 is that they must be represented by licensed counsel. In *S. Stern & Company v. United States,* 331 F.2d 310, 51 C.C.P.A. 15 (1963), the Court of Customs and Patent Appeals held that 28 U.S.C.A. § 1654 would not allow a lay partner in a partnership to represent the partnership in a judicial proceeding. Likewise, there is a long line of cases starting with *Osborn v. Bank of United States,* 9 Wheat. (22 U.S. 738), 6 L.Ed. 204, and continuing through *Commercial & Railroad Bank of Vicksburg v. Slocomb,* 14 Pet. (39 U.S. 60), 10 L.Ed. 354 (1840); *Nightingale v. Oregon Central Railway Company,* 18 Fed.Cas. No. 10,264, p. 239; *Brandstein v. White Lamps,* 20 F.Supp. 369 (S.D. N.Y., 1937); *MacNeil v. Hearst Corp.,* 160 F.Supp. 157 (Del., 1958); and *Flora Construction Company v. Fireman's Fund Insurance Company,* 307 F.2d 413 (C.A.10, 1962), which have held that

under 28 U.S.C.A. § 1654 and its predecessor statutes a corporation may only be represented by licensed counsel. Several of these cases, particularly *Nightingale, Hearst* and *White Lamps,* have emphasized the importance of the Centuries-old concept of a Court having a lawyer before it who has been qualified to practice, and who is subject to the Court's control.... Corporations and partnerships, by their very nature, are unable to represent themselves and the consistent interpretation of § 1654 is that the only proper representative of a corporation or a partnership is a licensed attorney, not an unlicensed layman regardless of how close his association with the partnership or corporation.

■ The general rule applies even where the person seeking to represent the corporation is its president and major stockholder. *In re Las Colinas Development Corp.,* 585 F.2d 7 (1st Cir.1978), *cert. denied,* 440 U.S. 931, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979). Nevertheless, plaintiff Frank Palazzo argues that the corporation's assignment of its claim to him operates to avoid this long standing policy.

In *National Independent Theater Distributors, Inc. v. Buena Vista Distribution Co.,* 748 F.2d 602 (11th Cir.1984), we rejected a similar argument by a corporate shareholder seeking to represent his corporation *pro se.* There, the plaintiff dissolved the corporation, and moved to substitute himself as the party plaintiff in place of the corporation. In upholding the district court's denial of the motion, we relied on the rule requiring corporate representation by counsel, and recognized the disruptive effect that lay representation can have on the litigation process. *Id.* at 609–10.

Moreover, in a situation identical to the one at bar, an individual's attempt to represent corporate claims *pro se* was considered and rejected by our sister circuit in *Jones v. Niagara Frontier Transp. Auth.,* 722 F.2d 20 (2d Cir.1983). There, a corporation had assigned its legal claims to its chief executive officer and sole shareholder. In rejecting the officer's attempt to proceed *pro se* on the corporate claims, the

court stressed that the federal courts have disapproved "any circumvention of the rule [of corporate representation by counsel] by the procedural device of an assignment of the corporation's claims to the lay individual." *Id.* at 23, *citing Heiskell v. Mozie*, 82 F.2d 861 (D.C.Cir.1936) and *Mercu-Ray Industries, Inc. v. Bristol-Myers Co.*, 392 F.Supp. 16 (S.D.N.Y.1974), *aff'd. mem.*, 508 F.2d 837 (2d Cir.1974).

■ We see no reason to permit any evasion of the general rule by the simple expedient of the assignment of corporate claims to the *pro se* plaintiff. Nor is any injustice done to plaintiff by this holding. The record is clear that the court below was more than accommodating in urging proper representation of the corporate claims. When original counsel for the plaintiffs withdrew, the court ordered plaintiffs to secure substitute counsel within 30 days. Despite plaintiffs' failure in this regard, the U.S. Magistrate, over 10 months later, in March of 1982, allowed the corporation another 10 days to obtain counsel for response to defendant's motion for summary judgment. Plaintiffs having been fully advised of the need for proper representation of the corporate claims, we agree with the lower court's dismissal of these claims for lack of proper representation.

### Count V

■ Count V alleges a conspiracy to restrict the sale of and increase the price of gasoline in the state of Florida, in violation of the Florida Antitrust Act, F.S. § 542.01 *et seq.*[3] The count seeks to recover for damages to Advanced, as well as for damages allegedly accruing to Tina and Frank Palazzo in their individual capacities. As just discussed, Frank may not assert the corporate claims in a *pro se* capacity. However, Frank also argues that he has succeeded to Tina's claims by virtue of her assignment of those claims to him.[4] The lower court found that Frank had failed to timely assert his right to proceed with Tina's claims. We need not, however, decide whether Frank, in his *pro se* capacity, is entitled to represent Tina's claims as the transferee of those claims, for even assuming that he is, these individual claims must fail for lack of standing.

Although the Florida courts have apparently not decided the precise question presented here, they have observed that the Florida act is patterned after the Sherman Anti-Trust Act, *Point East One Condominium, Inc. v. Point East Developers, Inc.*, 348 So.2d 32, 38 (Fla.Dist.Ct.App. 3rd 1977) (Hubbart, J., concurring and dissenting in part), and that great weight is to be given to federal construction of federal laws in construing the state act. *See, e.g., Sabates v. Int'l Medical Centers, Inc.*, 450 So.2d 514, 517 (Fla.Dist.Ct.App. 3rd 1984) (construing Florida Antitrust Act of 1980); *Hackett v. Metropolitan General Hospital, Inc.*, 422 So.2d 986, 988 (Fla.Dist.Ct.

**3.** That statute, as it existed at the time this action was filed, made the following activity illegal:

"(1) Any person who shall or may become engaged in any combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons or of either two or more of them, for either, any or all of the following purposes:

(a) To create or carry out restrictions in trade or commerce or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state;

(b) To increase or reduce the price of merchandise, produce or commodities;

(c) To prevent competition in the manufacture, making, transportation, sale, or purchase of merchandise, produce, or commodi-

ties, or to prevent competition in aids to commerce;

(d) To fix at any standard or figure whereby its price to the public shall be in any manner controlled or established any article or commodity of merchandise, produce, or commerce intended for sale, use, or consumption in this state; ...."

F.S. § 542.05 (1975). This statute was repealed by the Florida Antitrust Act of 1980, which substantially revised the Florida antitrust law. 1980 Fla.Laws C. 80–28 § 3. This revision does not affect the disposition of this case, however.

**4.** In a property settlement agreement pursuant to the divorce of Tina and Frank Palazzo, Tina transferred to Frank all her interest in, and any claims arising from her interest in Advanced Sales Corporation.

App.2d 1982) (same). As a sort of reverse of *Erie* we thus review federal authority on the subject, as we believe the Florida state courts would do if faced with the same question. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).[5]

This circuit has recently addressed the question of the standing of individuals to prosecute antitrust claims. In *National Independent Theater Exhibiters v. Bueno Vista Distribution Co.,* 748 F.2d 602 (11th Cir.1984), we rejected the claims of a corporate officer seeking to recover damages in his individual capacity for alleged violations of the federal antitrust laws:

> Standing to prosecute a private antitrust action under section 4 of the Clayton Act requires the plaintiff to prove that "he is within that sector of the economy which is endangered by a breakdown of competitive conditions in a particular industry." *Jeffrey v. Southwestern Bell,* 518 F.2d 1129, 1131 (5th Cir. 1975). *See Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.,* 710 F.2d 752, 762 (11th Cir. 1983). The plaintiff must be the target against which anticompetitive activity is directed. *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 710 (11th Cir.1984); *Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546–

47 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). The injury must be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' act unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). "Incidental or consequential injury or injury remotely caused by an antitrust violation does not give a plaintiff standing to complain that he has been injured by reason of anything forbidden in the antitrust laws." *Midwestern Waffles,* 734 F.2d at 710–11. *See Jeffrey,* 518 F.2d at 1131 (citing cases).

*Id.* at 608. *See also Stevens v. Lowder,* 643 F.2d 1078 (5th Cir. Unit B 1981); *Jones v. Ford Motor Co.,* 599 F.2d 394 (10th Cir.1979).

This prudential limitation on standing is intended to forestall the multitude of claims for incidental or consequential injuries which theoretically could be traced to the "ripple effect" of anti-competitive activity. The Supreme Court has also acknowledged the important role which this limitation plays in antitrust actions generally. *Associated General Contractors v. Carpenters,* 459 U.S. 519, 535–37, 103 S.Ct. 897, 907–08, 74 L.Ed.2d 723 (1983).[6]

In the present case, the individual claims of Frank and Tina[7] are clearly the type

---

5. As stated, *supra,* note 3, the Florida Antitrust laws were substantially revised in 1980. As part of this revision, federal antitrust jurisprudence was expressly made persuasive authority for the interpretation of the state antitrust laws. F.S. § 542.32 (1984). Even before this express provision was made a part of Florida law, however, the state courts recognized the similarities between the state and federal provisions. We therefore believe our course here is the correct one.

6. *See generally* Note, *Employee Standing Under § 4 of the Clayton Act,* 81 Mich.L.Rev. 1846 (1983).

7. As set out in the complaint:
   G) Plaintiffs FRANK PALAZZO and TINA PALAZZO have suffered and are continuing to suffer damages through, *inter alia:*
   1.) Threat of loss of the property leased to ADVANCED by foreclosure proceedings which were stayed only because ADVANCED

sought relief under Chapter XI of the Bankruptcy Act.
   2.) Destruction of personal credit standing and personal business goodwill.
   3.) Increased mental and physical stress brought on by the pressures of working long hours to protect the source of their livelihood.
   4.) Loss of the ability to lead a normal social life because of reduced family income and the long working hours required in the struggle to protect their livelihood threatened by the violations by GULF.
   5.) Loss of the ability to lead a normal family life because of reduced family income and the long working hours required in the struggle to protect their livelihood threatened by the violations by GULF.
   H) As a direct result of the violations by GULF of Florida law, Plaintiff FRANK PALAZZO has suffered the following damages:
   1.) Loss of the ability to carry on the business of American Janitorial and Building Maintenance Services, Inc.

which this and other courts have consistently rejected in antitrust actions. Claims for loss of income and loss of profits resulting from injury to a business are simply too remote to be cognizable claims under the antitrust laws. Moreover, a review of the complaint and the record indicates that any anti-competitive activity was aimed at Advanced as a retailer of gasoline, and not at Frank and Tina individually. The pleadings, broadly and loosely read, allege a conspiracy designed to restrict the supply of gasoline to Advanced. And while injury is claimed to have occurred to Frank and Tina as a result thereof, the record fails to raise any inference that the alleged illegal activity was directed at them in their individual capacities. Thus, the individual plaintiffs were not the target of any anti-competitive activity. *Nat'l. Ind. Theatre*, 748 F.2d at 609–10.

■ We are also reassured that the decision we reach does not "leave a significant antitrust violation undetected or unremedied." *Associated General Contractors*, 459 U.S. at 542, 103 S.Ct. at 911. Count V asserts a conspiracy to increase the price and restrict competition in the sale of motor gasoline in Florida. However, in the seven years since this action was initiated, plaintiff has failed to adduce any evidence tending to indicate illegal activities on the part of defendant Gulf or others. The only allegedly conspiratorial acts of Gulf are that it charged plaintiff Advanced the dealer tank wagon price for its gasoline, and that it submitted statements to the FEA challenging Advanced's request for a base period allocation. These statements, along with similar statements submitted by competitors of Advanced, are asserted to constitute a conspiracy in restraint of trade.

As plaintiff Frank Palazzo acknowledged at his deposition, however, these submissions to the FEA were part of the public record, and were made as part of the estab-

lished procedure at the time for objecting to requests for allocations. 10 C.F.R. 205.-23 (1977). *Cf. United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (no Sherman Act liability for concerted efforts to influence public officials, regardless of intent or purpose). More important, defendant Gulf has come forward with factually specific affidavits from several officers denying any illegal conspiracy or agreement to restrict Advanced's gasoline allocation, or to increase the price of gasoline to Advanced. In the face of such sworn denials, "it is incumbent upon the plaintiff to produce significant probative evidence demonstrating that a genuine issue of fact exists...." *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 554 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Plaintiff has not pointed to any such evidence, and we have found it in neither the 800-plus page record, nor in the 500 pages of depositions taken so far in this case. Thus, even assuming plaintiff's standing to prosecute the individual claims, his case could not withstand a motion for summary judgment.

### Conclusion

As the U.S. Magistrate observed in his recommendation to the district court, "this case involves gasoline, not wine, and, thus, there is no reason to think that it will improve with age." Report and Recommendation at 8–9. For the reasons set forth, the action of the district court is affirmed, and the stands case dismissed as to all parties and all counts.

AFFIRMED.

2.) Loss of income from the inability to carry on the business of American Janitorial and Building Maintenance Services, Inc.

3.) Reduced pay from ADVANCED because of a required increase in working hours at no increase in salary.

4.) Reduction in actual salary paid by ADVANCED because of impaired ability of ADVANCED to pay.

The amount of all said damages are unknown at present, and Plaintiff prays leave to amend this Complaint by inserting the true amounts when known.