592 So.2d 344 (1992)
RONBECK CONSTRUCTION CO., INC., and Ronald Ferschke, Appellants,
v.
SAVANNA CLUB CORPORATION and Savanna Club Realty Inc., By and Through its Trustees, Former Directors, Joyce Bronson, Thomas Checca and Deborah Scott; and H.K. "Buddy" Montgomery, Appellees.
No. 91-0912.
District Court of Appeal of Florida, Fourth District.
January 8, 1992.
*345 Franklin L. Hileman, Miami, for appellants.
Leonard K. Samuels of Berger & Shapiro, P.A., Fort Lauderdale, for appellees.
FARMER, Judge.
This is a dispute between an owner and a general contractor over money due under a construction contract. In April 1987 the parties entered into a contract for the construction of recreational facilities, using the standard AIA form A107 (Sept. 1970 ed.). Because of a relationship between the parties, their contract expressly provided that neither was to make a profit in the transaction. The initial contract price was $400,000.
Two months later, the parties also orally agreed that Ronbeck would set up manufactured housing units at the same development and would construct the "amenities packages" for these units. No price was apparently specified for this oral agreement, except that again no profit would be earned by either party. Later on, several change orders adding more than $175,000 to the initial price were made under the original written contract in December 1987 and January 1988.
Then in May 1988 the parties signed a written agreement reciting that there were unpaid supplier and subcontractor invoices exceeding $51,000 incurred under the original contract as modified and changed; that the owner had paid or would pay these suppliers and subcontractors; that the owner had already paid other lumber suppliers; that as a result of these payments Ronbeck owed the owner $21,558.89, which Ronbeck agreed to pay in installments; that Ronbeck would complete the construction described in the original contract; and that upon payment in full Ronbeck would get a release from the owner.
In its lawsuit against Ronbeck, the owner alleges that the May oral agreement was procured by misrepresentations by Ronbeck, and that Ronbeck concealed profits from the owner that Ronbeck had improperly made in the transaction by duplicative billing under the written contract and the later oral agreement. It sought rescission *346 of the May 1988 agreement, rescission of the original contract, damages for breach of all agreements, and damages for fraud, conversion, civil theft and conspiracy. In addition to Ronbeck, the owner named the corporate president of Ronbeck and one of its employees. Neither of these additional defendants was a party to the written construction contract or, for that matter, any of the later agreements.
The original contract contains article 15, which says in full that:

All claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. [e.s.]
At first the trial court ordered arbitration of those claims arising out of the original contract, but allowed the claims relating to the oral agreement to be resolved in court. Later the owner amended its complaint, and a successor trial judge changed the ruling on arbitration. Specifically he held:
1. Defendant's Motion To Stay and Compel Arbitration of all counts set forth in Plaintiffs' Second Amended Complaint is denied. The basis of [sicis?] 4 Fla.Jur.2d, Arbitration and Award, § 7 (1978).
2. This Court's earlier Order * * * is rescinded due to allegations of alleged criminal activity set forth in Plaintiffs' Second Amended Complaint.
3. This case is specially set for a non-jury trial for the week of July 9, 1991.
It is that non-final order which Ronbeck asks us to review under rule 9.130(a)(3)(C)(v).
Section 682.02, Florida Statutes (1989), provides:
Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable without regard to the justiciable character of the controversy; provided that this act shall not apply to any such agreement or provision to arbitrate in which it is stipulated that this law shall not apply or to any arbitration award thereunder.
Our supreme court pointed out in Roe v. Amica Mutual Insurance Co., 533 So.2d 279 (Fla. 1988), that "arbitration is a favored means of dispute resolution and courts indulge every reasonable presumption to uphold proceedings resulting in an award." 533 So.2d at 281. See also Intracoastal Ventures Corp. v. Safeco Ins. Co. of America, 540 So.2d 162 (Fla. 4th DCA 1989).
As the federal courts do with comparable provisions under the United States Arbitration Act, 9 U.S.C. sections 1-14 (1982), we too should resolve all doubts about the scope of an arbitration agreement as well as any questions about waivers thereof in favor of arbitration, rather than against it. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). We construed a nearly identical provision in William Passalacqua Builders Inc. v. Mayfair House Association Inc., 395 So.2d 1171 (Fla. 4th DCA 1981), to require arbitration of claims indistinguishable from some of the claims presented in this suit.
In this case, the agreement was to arbitrate "all claims or disputes arising out of this Contract or the breach thereof." No interpretation is needed for "all claims or disputes", as plainly the claim for damages under the original contract fits within those words. And we construe the term "or the breach thereof" to cover even a dispute relating to the May 1988 agreement, for it arose from the original contract *347 and it surely encompassed an alleged "breach thereof". Moreover, all of the owner's fraud, conversion, conspiracy and civil theft damages claims against Ronbeck arose from the original contract, because the basis for these alleged claims lies in obligations accruing or resulting from it. Hence these claims come within the arbitration provision.
And even the owner's claim for rescission of the original contract is subject to the arbitration provision, because the alleged basis for rescission does not include any allegation that the arbitration provision itself was fraudulently induced. Indeed all of the grounds for the fraud claims are predicated on events dealing with performance under the original contract, rather than its making.
There is no doubt that Florida arbitration law makes an arbitration provision in a contract separate from the rest of the contract. Section 682.03, Florida Statutes (1989), contains several provisions establishing the separable nature of arbitration agreements. Subsection (1) explicitly uses the words "the making of the agreement or provision" [e.s.] twice. The latter usage especially covers this precise point:
"If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application." [e.s.]
See also Section 682.03(4), Florida Statutes (1989). The words "the agreement or provision" obviously refer only to the arbitration agreement or provision, not to the entire carrier agreement. Hence, any claim of rescission that does not expressly address the arbitration agreement or provision itself is, if it concerns something within the scope of the arbitration provision, also subject to arbitration. See Beaver Coaches Inc. v. Revels Nationwide R.V. Sales Inc., 543 So.2d 359 (Fla. 1st DCA 1989); Physicians Weight Loss Centers of America Inc. v. Payne, 461 So.2d 977 (Fla. 1st DCA 1984); and R.W. Roberts Construction Co. Inc. v. St. Johns River Water Management District, 423 So.2d 630 (Fla. 5th DCA 1982).
After the citation to 4 FLA.JUR.2D, Arbitration and Award, section 7, the trial judge gave as his reason for rejecting arbitration the "allegations of criminal activity set forth in Plaintiffs' Second Amended Complaint." This indisputably refers to the civil theft and conversion claims. The encyclopedia flatly says that "questions as to criminal offenses or matters colored by a public interest are not arbitrable." 4 FLA. JUR.2D, Arbitration and Award, section 7, at 16. Frankly the phrase "questions as to criminal offenses" is so obscure as to be all but meaningless.
It is unnecessary, however, to go to the encyclopedia with clear Florida precedent at hand. In Sabates v. International Medical Centers Inc., 450 So.2d 514 (Fla. 3d DCA 1984), the court observed that the Florida Arbitration Act contains no indication that the legislature intended that civil theft damages claims be resolved exclusively within the judicial system. In the words of Judge Pearson:
Thus, even though the civil theft statute has at its core a criminal violation and provides for the imposition of treble damages where a violation is found, those factors are hardly sufficient to overcome the parties' agreement to arbitrate or to bring this particular statutory violation within that narrow class of cases that have been excepted from arbitration on public policy grounds.
450 So.2d at 518. See also Strauss v. Gorman, 471 So.2d 1303 (Fla. 3d DCA 1985).
Here, the only claim arguably outside the scope of the arbitration provision is the claim for damages under the oral agreement and for rescission of it, and those claims appear factually related to all the other claims. The trial judge should decide in the first instance whether the few remaining judicial claims should be stayed pending arbitration. An important question in that inquiry will be whether a prior judicial resolution of the non-arbitrable claims would prejudice the primacy of the arbitration process.
*348 We do not agree with appellees that the absence of a transcript for the hearing on the motion to compel arbitration requires an affirmance. The rule of Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979), applies only where the trial court's decision turns on its resolution of contested facts. Here the trial court faced a pure legal question. Both parties have furnished us with complete appendices containing the pleadings, contract documents and order under review, all of which permit us to review the same legal issue on the merits.
Appellant also asks us to review the trial court's non-final order refusing to set the non-arbitrable claims for a jury as requested in its pleading. Instead, the court set a non-jury trial. Appellees agree that they are entitled to a jury trial. Neither side, however, has raised the question whether we have jurisdiction to review this issue on non-final review. Plainly we do not because this kind of order is not one of the limited classes of orders named in rule 9.130.
We also think it clear from binding precedent of this court that we do not have jurisdiction to consider the jury trial issue on petition for certiorari. See Lindsey v. Sherman, 402 So.2d 1349 (Fla. 4th DCA 1981). It is true that our Lindsey decision is in conflict with Hobbs v. Florida First National Bank, 480 So.2d 153 (Fla. 1st DCA 1985); Valiante v. Allstate Insurance Company, 462 So.2d 590 (Fla. 2d DCA 1985); and Spring v. Ronel Refining Inc., 421 So.2d 46 (Fla. 3d DCA 1982) on the propriety of certiorari review of orders denying trial by jury. But we are stare decisis-bound to follow it.
Therefore, limiting our review to the arbitration decision only, we vacate the order denying arbitration with instructions to send all of the claims, except the oral contract damages claims (count IV) and the claim against the non-contracting defendant (count IX), to the arbitrators. The trial court should also consider whether a stay of trial of the nonarbitrable claims is necessary to preserve the essence of the arbitration agreement.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ANSTEAD and STONE, JJ., concur.