[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10030

_____

D.C. Docket No. 1:12-cv-22539-WPD


LATELE TELEVISION, C.A.,
a Bolivarian Republic of Venezuela corporation,

Plaintiff - Appellant,


versus


TELEMUNDO COMMUNICATIONS GROUP, LLC,
a Delaware limited liability corporation,
TELEMUNDO TELEVISION STUDIOS, LLC,
a Delaware limited liability corporation,
TELEMUNDO STUDIOS MIAMI, LLC,
a Delaware limited liability corporation,
TELEMUNDO NETWORK GROUP, LLC,
a Delaware limited liability corporation,
TELEMUNDO INTERNACIONAL, LLC,
a Delaware limited liability corporation, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 20, 2021)

Before WILLIAM PRYOR, Chief Judge, JORDAN and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This appeal revolves around an issue of corporate control -- who speaks for and manages the business affairs of LaTele Television, C.A. ("LaTele"), a Venezuelan corporation. In 2012, LaTele, acting through its president, Fernando Fraiz, and the attorneys he chose, sued the American television network Telemundo in the Southern District of Florida claiming that Telemundo infringed LaTele's copyrighted telenovela, Maria Maria. A protracted legal battle, spanning many years, ultimately devolved into a battle over control of this otherwise ordinary copyright case.

While the lawsuit was pending in Miami, a Venezuelan criminal court appointed a governmental board -- called "La Junta" -- to displace Fraiz and manage the affairs of LaTele. Fraiz asked the district court, however, to determine that he was the proper representative of LaTele and that the Junta, acting through its handpicked attorney, should be excluded from participating in the lawsuit. Initially, the district court stayed the case, concluding that it did not have the authority to resolve who spoke for LaTele and controlled the litigation of its

2

claims. However, in 2018, the district court lifted its stay, removed Fraiz's attorneys (Albert Piantini and Andrew Kassier) from any participation in the case, and affirmed that the Junta's attorney (Manuel Mesa) was counsel of record. LaTele, through Fraiz and his attorneys, appealed the decision.

We are satisfied that we have jurisdiction to entertain this matter. For starters, the collateral order doctrine allows us to treat the district court's order as final for purposes of appeal. The order conclusively determined an important issue that was completely separate from the merits of the copyright claim, and would otherwise be unreviewable on appeal from a final judgment. However, the Junta and Telemundo challenge Fraiz's standing to bring this appeal, arguing that he was not authorized to appeal on behalf of LaTele. But the Junta and Telemundo's position assumes that Fraiz is no longer the proper representative of the company. To the extent that Fraiz may speak for the company, the interests of LaTele are adverse to the district court's order and there would be standing to pursue the appeal.

But, ultimately, Fraiz is not the proper representative of LaTele in this lawsuit. The district court correctly determined -- based on its review of four foreign court orders -- that the Junta has the lawful authority to manage the affairs of LaTele and this lawsuit. Since Fraiz has no authority to speak for or represent

3

LaTele in this case, his handpicked attorneys were not authorized to appeal on LaTele's behalf. Accordingly, we dismiss this appeal.

I.

LaTele Television, C.A. is a Venezuelan television network. Its parent corporation is Imagen Television, C.A., whose majority shareholder is Fernando Fraiz. Fraiz also served as LaTele's president and director, as well as the CEO and the head of the board of directors of Imagen. In 2012, LaTele brought this copyright infringement suit against the American Spanish-language television network Telemundo (and four of its affiliates) in the United States District Court for the Southern District of Florida. LaTele claimed that Telemundo was producing, broadcasting, and distributing a telenovela, El Rostro de Analia, which unlawfully copied LaTele's protected telenovela, Maria Maria, in violation of the Copyright Act, 17 U.S.C. § 101, et seq. LaTele was originally represented by the law firm Stroock & Stroock & Lavan, but, in 2013, they withdrew as counsel of record. LaTele replaced them with attorneys Albert Piantini and Andrew Kassier. The case proceeded for several years, during which time LaTele incurred hundreds

4

of thousands of dollars in sanctions for LaTele's failure to comply with the court's discovery orders.[1]

Meanwhile, back in Venezuela, Fraiz became embroiled in a criminal case that resulted in him losing control of his companies. The suit was brought in the Sixth Court of First Instance for the Criminal Judicial Circuit of the Judicial Circumscription of the Metropolitan Area of Caracas. On May 7, 2014, the Venezuelan court issued an order appointing an oversight board -- called La Junta Interventora -- over the Imagen companies, including LaTele. Specifically, the court's May 7, 2014 order in part read this way:

> DECREE[D] THE PRECAUTIONARY MEASURE PROHIBITING THE DISPOSITION AND ENCUMBRANCE of the real and personal assets and the takeover of the firms that guarantee the results of the investigation that be under or list the names of . . . FERNANDO FRAIZ TRAPOTE . . .
>
> DECREE[D] THE FREEZING AND IMMOBILIZATION of each and everyone of the bank accounts that include as natural and legal persons . . . FERNANDO FRAIZ TRAPOTE . . .
>
> DECREE[D] THE PRECAUTIONARY MEASURE appointing an OVERSIGHT BOARD [JUNTA INTERVENTORA] . . . for the purpose of protecting the continued provision of the universal public service, [and] the use of the frequency assigned for open television . . .

---

[1] On November 10, 2014, the magistrate judge overseeing the case found that LaTele had "failed to produce relevant documents responsive to discovery requests, provided an incorrect or significantly misleading interrogatory answer, submitted a false or substantially incorrect declaration, provided incorrect or misleading deposition testimony and never timely advised its own trial counsel about significant transactions which might affect its standing to prosecute this case." The magistrate judge awarded Telemundo over $500,000 in attorney's fees. As of October 2018, that award had not yet been paid.

5

On May 19, 2014, the same court issued another order, acknowledging the Junta's oversight role and providing it with broad powers to manage the affairs of LaTele. It ordered that for "the purpose of complying with the ruling issued on May 07, 2014,"

> the appointed interventionists shall have unlimited authority of auditing, administration, disposal, control and monitoring, including all the responsibilities that the Law as well as the Corporate Bylaws confer to the Assembly Shareholders, to the Administrators and to the other administrative bodies of the previously mentioned companies, in the performance of their duties.

The May 19th order further provided that "the president, as well as the members of the current Board of Directors shall be discharged of their duties upon the installation of the Intervention Board."[2]

Several months later, the Junta became involved in the federal copyright suit. In September 2014, a receiver appointed by the Venezuelan criminal court ratified Piantini's representation of LaTele and authorized him to continue acting on LaTele's behalf. According to Fraiz, Piantini and Kassier met with representatives of the Junta in October 2014 to discuss "exactly what powers had been purportedly given to the Junta by the Venezuelan court" and to "address critical issues affecting this lawsuit," including the payment of outstanding litigation costs incurred by LaTele. In November 2014, Manuel Mesa, an attorney

---

[2] The May 19th order mentioned "Grupo Imagen" -- rather than Imagen Television, which is LaTele's parent company -- but Fraiz does not argue that this order does not apply to LaTele.

6

selected by the Junta, entered an appearance as co-counsel for LaTele in the copyright suit. Neither Piantini nor Kassier raised any objection to Mesa's involvement at the time, nor were the leadership changes at LaTele brought to the district court's attention.

But that changed several months later. In May 2015, LaTele, in a motion signed by Fraiz and filed by Piantini and Kassier, moved for declaratory relief, asking the district court "to make a determination that Mr. Fernando Fraiz may continue to act in representation of [LaTele] in these proceedings, to the exclusion of the alleged intervening board in Venezuela ('the Junta')." Fraiz claimed that the Junta's control over LaTele was illegitimate, that the Venezuelan judge overseeing the criminal case was corrupt, and that Fraiz had been denied due process. He urged the district court to confirm that he continued to speak for and represent LaTele or, in the alternative, to limit the involvement of the Junta in the copyright suit.

From this point on, the Junta, through Mesa, and Fraiz, through Piantini and Kassier, were at war with each other. Each side moved to bar the other from participating in the lawsuit on behalf of LaTele, each group purporting to be the sole representative of the company. The district court concluded that it did not have the authority to make an ancillary determination about the legal rights of the parties because the issue had not been properly pleaded in a complaint. The court

7

stayed further consideration of the matter of control and administratively closed the case. Fraiz did not appeal from this decision. He did, however, file a notice of appeal from the sanctions order entered by the district court. A panel of this Court dismissed that appeal for lack of jurisdiction. See LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC, No. 15-11792, 2016 WL 6471201 (11th Cir. May 26, 2016).

Instead, in September 2015, Fraiz filed a separate action in federal district court on behalf of LaTele against the Junta and Javier Jorda, the Junta's U.S. representative. See LaTele Television C.A. v. La Junta Interventora, 1:15-cv-23639-JAL (S.D. Fla. 2015). As he had done in the copyright case, Fraiz sought a declaratory judgment on the issue of who controlled LaTele. The district court dismissed the case for lack of subject matter jurisdiction. Again, Fraiz did not appeal from that determination.

The underlying copyright case remained closed until February 2018, when Fraiz returned to the district court overseeing the copyright case. He moved to lift the stay and remove Mesa as counsel for LaTele. Fraiz claimed to have two new orders from "the same Venezuelan Circuit Court that had created the Junta," which demonstrated that he was in control of LaTele.[3] He alleged that the first order,

---

[3] In reality, it appears that the two orders were issued not by the court that issued the May 2014 orders, but by two other Venezuelan courts. The first order was issued on December 20, 2017 by the Sixth Court of Original Jurisdiction Acting in Oversight of the Criminal Court Circuit of the

issued in December 2017, clarified that the Junta "ha[d] no authority to act outside of Venezuela." And, according to Fraiz, the second order, issued in January 2018, "actually dissolve[d] the Junta as the purported temporary oversight board" of LaTele.

Fraiz urged the district court to enforce these recent Venezuelan pronouncements and remove Mesa from the case. Both the Junta and Telemundo opposed Fraiz's efforts to lift the stay, challenging the legitimacy of the recent Venezuelan court orders as well as Fraiz's interpretation of them. On November 6, 2018, the district court granted Fraiz's motion to lift its stay, but it did not remove Mesa. Instead, based on its reading of the Venezuelan court orders, the district court removed attorneys Piantini and Kassier. It explained that the 2014 orders from the Venezuelan criminal court granted the Junta complete control over LaTele's affairs and discharged LaTele's president and board, including Fraiz. The trial court also determined that the two recent Venezuelan court orders did not dissolve the Junta's broad authority over the affairs of LaTele, nor did they

---

Metropolitan Area of Caracas -- a remarkably similar name to the first court, but not an identical one -- in response to a "request for clarification" filed by LaTele. The second order was issued on January 16, 2018 by a civil court, the Municipal Court of General Jurisdiction and Enforcement of Ancillary Relief Number Six of the Caracas Metropolitan Area, invalidating a shareholders' meeting at the request of Imagen Television. The Junta argued before the district court that the lawyer representing LaTele and Imagen Television in these courts "never had the authority to represent either company."

9

reinstate Fraiz as the controller of the company. Thereafter, it denied Fraiz's motions for reconsideration.

Fraiz appealed the district court's order to our Court. Almost two months later, LaTele, represented by the Junta, and Telemundo reached a settlement in the copyright infringement case and stipulated to voluntarily dismiss the case without prejudice. The district court agreed and dismissed the underlying action. Fraiz moved to stay the dismissal, which the district court denied, but the parties jointly agreed to stay the distribution of any settlement proceeds pending the resolution of this appeal.

II.

A.

Before we can review this interlocutory appeal from the district court's November 6, 2018 order, we must assure ourselves that we have jurisdiction to hear it. "[A]s a court of limited jurisdiction, we are generally barred from entertaining appeals of non-final orders because we have no congressional grant to do so." Hall v. Flournoy, 975 F.3d 1269, 1274 (11th Cir. 2020); see also 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts.").

However, there are narrow exceptions to the finality rule. One such exception is found in the collateral order doctrine, which treats some

10

determinations as final for purposes of appeal.  See SmileDirectClub, LLC v.

Battle, 4 F.4th 1274, 1277–78 (11th Cir. 2021) (en banc) (describing the scope of

the collateral order doctrine); Plaintiff A v. Schair, 744 F.3d 1247, 1253 (11th Cir.

2014) (setting forth the circumstances under which interlocutory orders may be

reviewed under the collateral order doctrine).  A ruling may be treated as a

collateral order when it "(1) conclusively determine[s] the disputed question, (2)

resolve[s] an important issue completely separate from the merits of the action, and

(3) [is] effectively unreviewable on appeal from a final judgment."  Hall, 975 F.3d

at 1274 (quoting P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S.

139, 144 (1993)).  The Supreme Court has cautioned that the class of collaterally

appealable orders is "narrow and selective in its membership."  Will v. Hallock,

546 U.S. 345, 350 (2006); see also Digital Equip. Corp. v. Desktop Direct, Inc.,

511 U.S. 863, 867–68 (1994).  But ultimately, "the collateral issues raised in the

interlocutory appeal must be 'too important to be denied review and too

independent of the cause itself to require that appellate consideration be deferred

until the whole case is adjudicated.'"  Schair, 744 F.3d at 1252–53 (quoting Cohen

v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)).

The district court's order terminating Piantini and Kassier as counsel for

LaTele meets each of the requirements for treatment as a collateral order.  For

starters, the order conclusively determined the question of who controls the

11

business affairs of LaTele and, therefore, who may select counsel to speak in court for LaTele -- that is, whether Fraiz or the Junta controls the company.  In the second place, the district court's order is completely separate from the merits surrounding the copyright dispute, and undeniably is a matter of considerable importance.  The issue of control concerns actions taken in Venezuela and has nothing to do with any claimed similarity between LaTele's and Telemundo's telenovelas.  Finally, the issue of control and the concomitant question of determining counsel of record would be effectively unreviewable on appeal from a final judgment.

The district court's order was about far more than just the disqualification of counsel.  Cf. Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 439–40 (1985) (explaining that "orders disqualifying counsel in civil cases . . . are not collateral orders" because they "can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal").  A typical disqualification order concentrates on facts related to the attorneys themselves, such as claims about attorney misconduct, e.g., id. at 428, competence, or conflicts of interest between attorneys, parties, or other individuals in the litigation, e.g., Flanagan v. United States, 465 U.S. 259, 262 (1984).

The district court in this case did something far different than simply disqualify a lawyer.  Although the district court "terminate[d]" Piantini and

12

Kassier, the order was all about who controlled LaTele, an issue of paramount importance to the parties. The court's analysis focused on the four Venezuelan court orders -- their meaning and effect on the management of LaTele -- in reaching the conclusion that the Junta properly controlled the business affairs of Imagen and its subsidiary, LaTele. While the Junta separately sought to bar Piantini and Kassier from making any further filings on behalf of LaTele because the attorneys were "ethically prohibited" from doing so, the district court did not address the reasons raised in that motion. In fact, the district court's reasoning did not focus on the conduct of the attorneys at all, but rather on the power and conduct of the principals -- Fraiz and the Junta.

Also unlike a typical disqualification order, the district court's November 6, 2018 order would be effectively unreviewable on appeal. The Supreme Court has explained that this requirement "means that failure to review immediately may well cause significant harm." Johnson v. Jones, 515 U.S. 304, 311 (1995) (citing 15A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3911 (2d ed. 1992)). In Devine v. Indian River County School Board, we held that an order denying the plaintiff the ability to appear pro se was a collateral order. 121 F.3d 576, 580 (11th Cir. 1997), overruled in part on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516 (2007). Specifically, we found that "[a]n order denying self-representation is analogous to other orders

13

courts have found immediately appealable," such as orders denying a litigant leave to proceed in forma pauperis or denying intervention as of right because each "of these orders effectively closes the courthouse door to litigants." Id. at 581. This harm, we concluded, "cannot be repaired after a judgment on the merits." Id. at 580. Here too, LaTele, insomuch as it is properly represented by Fraiz, was put out of court by the district court's order and this harm would be effectively unreviewable on appeal from a final judgment.[4] As we see it, then, the collateral order doctrine properly confers jurisdiction on this Court.

The Junta and Telemundo challenge our jurisdiction to hear this appeal on a different ground -- standing. We review questions of standing de novo. MSP Recovery Claims, Series LLC v. QBE Holdings, Inc., 965 F.3d 1210, 1216 (11th Cir. 2020). Generally, "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1309 (11th Cir. 2004) (quotation omitted).

---

[4] We note that while this case was on appeal, but before it was briefed, the district court entered a final judgment. Fraiz clearly believed that an appeal could be taken at that time too since he filed a second notice of appeal on behalf of LaTele once the district court dismissed the case without prejudice. However, the voluntary dismissal of the case by LaTele precludes an appeal from the final judgment. See, e.g., Corley v. Long-Lewis, Inc., 965 F.3d 1222, 1233 (11th Cir. 2020) (explaining that "interlocutory orders that do not address the merits of a plaintiff's claim cannot establish appellate standing" and "[a]s a general rule, a plaintiff is not adverse to a voluntary dismissal that he requested"). But regardless, we look at whether the district court's November 6, 2018 order was a collateral order at the time Fraiz filed his appeal of this order -- not many months later after the case reached a final judgment. See Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 107 (2009) (explaining that when analyzing the collateral order doctrine, courts do not engage in an "individualized jurisdictional inquiry," but rather focus on "the entire category to which a claim belongs").

Additionally, on appeal, parties must "establish their standing not only to bring claims, but also to appeal judgments." Wolff v. Cash 4 Titles, 351 F.3d 1348, 1353 (11th Cir. 2003). Appellate standing is necessarily governed by the requirement of adverseness, for "[o]nly a litigant who is aggrieved by the judgment or order may appeal." Id. at 1354 (quotation omitted).

This appeal was filed by LaTele Television, C.A., which is clearly a party to the copyright infringement litigation. The Junta and Telemundo argue that LaTele's interests are not adverse to the district court's order because it was completely "satisfied" by the result. But their position, of course, assumes that the Junta properly speaks for and represents the company. To hold that LaTele, as represented by Fraiz, does not having standing to appeal necessarily requires us to determine who may represent LaTele. Both Fraiz and the Junta purport to speak for the company. Their interests are plainly adverse. LaTele, if indeed it is controlled by Fraiz, would be aggrieved by the order entered in district court. It may appeal from that order.

A corporation is an artificial entity that can only act through its officers, agents, and employees. J.J. Rissell, Allentown, PA Tr. v. Marchelos, 976 F.3d 1233, 1235 (11th Cir. 2020) (quoting Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985)). Moreover, "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through

15

licensed counsel." Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201–02 (1993); see also Palazzo, 764 F.2d at 1385 (explaining that a corporation "cannot appear pro se, and must be represented by counsel").

This makes the choice of counsel a critical decision, and in this case we are required to determine who gets to make that choice. As we explained in Devine, "the right to represent one's self is effectively lost if not immediately vindicated." 121 F.3d at 580. Here, an appeal from the district court's order of November 6, 2018 was the only means Fraiz had to vindicate LaTele's rights if he indeed controlled the company.

Telemundo points our attention to J.J. Rissell, Allentown, PA Trust v. Marchelos, where we were presented with an appeal by an attorney who had been disqualified from representing the plaintiff. We dismissed the appeal, holding that "[w]hen an appeal is taken on behalf of an artificial entity by someone without legal authority to do so, the appeal should be dismissed." 976 F.3d at 1236. According to Telemundo, only the Junta "could lawfully represent the rights of La Tele" and, following J.J. Rissell, the appeal should be dismissed because it was taken by someone without legal authority to do so. But both Fraiz and the Junta claim to be the only authorized representative of LaTele. J.J. Rissell instructs us on what to do if we find that Fraiz lacks authority to speak for LaTele through his

16

counsel of choice. But it does not address the prefatory question surrounding the competing claims for control.

The Junta and Telemundo shift their focus and argue that "LaTele" did not appeal the district court's order; Fraiz did. They say Fraiz "improperly impersonated LaTele" when he filed a notice of appeal on behalf of the company. Because Fraiz is not a party to this lawsuit, they argue, he has no right to appeal. Instead, they suggest that Fraiz should have moved to intervene in district court if he wanted to challenge the district court's ruling. But it is not clear that Fraiz, either as an officer or a shareholder of LaTele, would have been able to intervene in the underlying copyright infringement suit, either as of right or by permission of the court under Federal Rule of Civil Procedure 24(a) and (b). A common shareholder does not have a right to intervene in all litigation involving the corporation. We have previously explained that a "shareholder's rights are merely derivative and can be asserted only through the corporation," and that "[a]lthough this rule does not apply in a case where the shareholder shows a violation of duty owed directly to him, diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right." Cook v. Trinity Universal Ins. Co. of Kan., 297 F. App'x 911, 913 (11th Cir. 2008) (quoting Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. Unit B Apr. 1981)); see also Fla. Seed Co. v. Monsanto Co., 105 F.3d 1372, 1376 (11th Cir. 1997) ("Courts

uniformly have held that stockholders, even sole stockholders . . . , lack standing to bring an antitrust suit for injury to their corporations.").

Nor does Fraiz, as an individual, have a claim on the underlying copyright suit. Instead, the copyright to Maria Maria is held by LaTele.[5] Moreover, if the Venezuelan court orders removed Fraiz as president and director of LaTele and as chief executive officer of its parent company, Imagen, Fraiz could not act on LaTele's behalf and perfect an appeal.

The short of it is the district court's order stripped Fraiz, purportedly speaking for LaTele, of the right to be heard through the counsel of his choice. If Fraiz is the proper representative of LaTele, then he has standing to appeal on behalf of LaTele. We cannot decide whether Fraiz improperly appealed the district court order on behalf of LaTele without first determining whether he is LaTele's proper representative.

## B.

Turning to the merits of who is authorized to represent LaTele, Fraiz advances one argument: that the district court misinterpreted the plain language of the Venezuelan court orders and, therefore, improperly removed Piantini and Kassier. According to Fraiz, the Venezuelan court orders divest the Junta of

---

[5] Ironically, both of the telenovelas, Maria Maria and El Rostro de Analia, as described by LaTele, involve a story of stolen identity.

18

control over LaTele and therefore Mesa should have been removed.  We remain

unpersuaded.

We review a district court's interpretation of foreign law de novo.  Pfeiffer

v. Bachotet, 913 F.3d 1018, 1022–23 (11th Cir. 2019).  The district court looked at

all four foreign court orders presented by Fraiz -- the two May 2014 orders, the

December 2017 order, and the January 2018 order.  It held that the May 2014

orders created the Junta, ordered it to take control of LaTele, and granted the Junta

"unlimited authority" and "control" over the affairs of the company.  As for the

December 2017 order, the district court determined that it "clarifie[d] that the Junta

cannot take certain actions without notifying the court that appointed it and getting

that court's approval," but that it said nothing about the Junta or Fraiz's authority

to represent LaTele in the copyright infringement suit.  Finally, the district court

concluded that the January 2018 order "revoke[d] the minutes of a June 17, 2014

shareholders meeting at which members of the Junta were appointed to the Board

of Directors of LaTele," but that the order did "not have any effect on the Junta's

appointment or authority to act."

The district court correctly read the Venezuelan court orders.  The plain

language of the May 2014 orders established the Junta as an oversight board for

Fraiz's companies as a "precautionary measure" to prevent the "mishandling" of

the company and granted to the Junta a broad swath of powers, including the

19

"unlimited authority of . . . control." Furthermore, the May 19, 2014 order also provided that "the president, as well as the members of the current Board of Directors shall be discharged of their duties upon the installation of the Intervention Board." This is a clear and unambiguous grant of authority to the Junta as well as a clear and unambiguous rejection of the company's prior leadership, which primarily included Fraiz.

The subsequent 2017 and 2018 Venezuelan court orders did not limit or nullify the Junta's authority. The December 2017 court order was limited in its effect. The Sixth Court of Original Jurisdiction Acting in Oversight of the Criminal Court Circuit of the Metropolitan Area of Caracas directly addressed its inability to "pronounce on court cases being heard outside the Territory of the Bolivarian Republic of Venezuela" and abstained "from issuing any other pronouncement." Fraiz points out that the order announced a limitation on the Junta's authority and explained that "the legal nature of the INTERVENING BOARD matches that of an ancillary to justice so that all of its actions must be reported to the Trial Court." But nothing in the December 2017 court order says that the Junta's involvement in this lawsuit is ultra vires or somehow invalid. Instead, it stopped short of ruling on any extraterritorial activity -- it observed simply that it "could not pronounce on court cases being heard outside the Territory of the Bolivarian Republic of Venezuela."

20

The January 2018 court order similarly does not speak to the Junta's authority over the affairs of LaTele in this case. The Municipal Court of General Jurisdiction and Enforcement of Ancillary Relief Number Six of the Caracas Metropolitan Area's order invalidated the June 17, 2014 LaTele special shareholders' meeting minutes. However, this order does not invalidate the Junta's control over this lawsuit. In fact, it reaffirmed the Junta's role overseeing LaTele's affairs, explaining that "the Intervening Board may only act as a Supervisor to ensure the proper management of the company." Nor did the court order purport to address this litigation, which is not mentioned at all.

The language of these orders establishes that the Junta has been selected to serve as the oversight board and, therefore, properly controls the business affairs of the company. Florida's Third District Court of Appeal reached the same conclusion on a similar question about control of LaTele. At the same time the copyright suit proceeded in federal court, LaTele was involved in an unrelated Florida state court tort action. See generally Publicidad Vepaco, C.A. v. Mezerhane, 176 So. 3d 273, 275 (Fla. 3d DCA 2015) (describing the case). In late 2016, the same control question surfaced in state court. Piantini and Kassier were arrayed on one side and Mesa on the other. The state trial court independently analyzed the Venezuelan court orders and agreed with the district court's reasoning and conclusion in this case that neither the 2017 nor 2018 order had any effect on

21

the Junta's appointment or authority to act.  The state court concluded that Mesa was counsel of record for LaTele, and that Piantini and Kassier were not authorized to represent LaTele in the state court tort action.  Piantini and Kassier appealed to the Third District Court of Appeal, which dismissed the petition, finding no error in the trial court's findings.  See Publicidad Vepaco C.A. v. Mezerhane, 273 So. 3d 1060, 1061 (Fla. 3d DCA 2019).  Rehearing was denied. Id. at 1060.

Fraiz's arguments to the contrary are unpersuasive.  First, he says that the district court erred by interpreting the absence of any language about who controls this litigation in the December 2017 order to mean that he had not proved his own authority in this litigation -- or inversely, the Junta's lack of authority in this litigation.  But Fraiz's reading of the Venezuelan orders is subject to the same criticism.  The 2017 and 2018 orders do not discuss Fraiz's role at LaTele or his authority over the company.  He points to no language that says those orders undo the 2014 orders, which unequivocally established the authority of the Junta as the oversight board over LaTele.

Second, Fraiz asserts that the Junta has never sought leave to appear in the federal copyright suit from the Venezuelan trial court and, therefore, it has no authority over this lawsuit.  For support, Fraiz points to the December 2017 order. But Fraiz fails to acknowledge the unambiguous language contained in the May

22

19, 2014 order, which provided the Junta with broad powers of "administration" and "control" over LaTele. The Junta had already been authorized by the Venezuelan court to control the affairs of LaTele, without any suggestion that the choice of counsel in a foreign litigation should be excluded from the ambit of its broad control.

All four orders affirm the creation and existence of the Junta and its supervisory powers over LaTele and its management. Even the newer orders confirm the Junta's oversight role. As the proper representative of LaTele, the Junta had the right to select counsel for LaTele in this litigation and it selected Mesa. The district court properly removed Piantini and Kassier from representing the company in this litigation. The lawyers were not authorized to file this appeal and their notice of appeal is rendered nugatory. As we said in J.J. Rissell, "[w]hen an appeal is taken on behalf of an artificial entity by someone without legal authority to do so, the appeal should be dismissed." 976 F.3d at 1235–36.

This appeal is DISMISSED.